HELEN M. CRABTREE ET AL., APPELLANTS v. BANKERS LIFE INSURANCE COMPANY OF DES MOINES, IOWA, RESPONDENT.—128 S. W. (2d) 1089.

Kansas City Court of Appeals. April 3, 1939.

*John Campbell* and *E. M. Jayne* for appellants.

*Mahan, Mahan & Fuller* and *Murrell & Murrell* for respondent.

*J. P. Lorentzen* of Counsel.

KEMP, J.—This is a suit for the recovery of $5000 upon a policy of life insurance issued by the defendant company to Isador L. Siegel. The defendant was a corporation organized under the laws of the State of Iowa, and was authorized to carry on its business of life insurance within other States, and particularly within the States of Illinois and Missouri.

The policy was dated October 28, 1925, and named Sarah M. Siegel and Jacob M. Siegel, wife and son respectively, as the beneficiaries un-

der the policy. At the time said policy was written, the insured was a resident of Iowa, in which State the contract of insurance was executed. At the time of his death the insured and the beneficiaries named in the policy were residents of the State of Illinois.

Isador L. Siegel, the insured, died on July 10, 1932. By letter dated July 11, 1932, the defendant was notified of the death of the insured, and on July 15, 1932, defendant wrote a letter to Sarah Siegel, advising her that the policy had lapsed on June 30, 1932 "because of the non-payment of the balance of the annual premium due October, 1931, which had been extended to June 30, 1931," and that "because of the policy loan outstanding at that time, together with accrued interest, the remaining cash value of the policy was only sufficient to maintain the policy until May 27, 1932, at which time it terminated without further value." On these alleged grounds, defendant denied liability.

Thereafter, the said beneficiaries assigned all of their rights and interest in the policy and their claims thereunder to Helen M. Crabtree, a resident of the State of Missouri, and to C. Tiffany, a resident of the State of Iowa. Suit was brought by said assignees to recover the insurance provided in the policy. In view of certain contentions made by defendant, it is necessary to set out the substance of the pleadings in this case.

Plaintiffs' petition alleged the execution of the contract of insurance with defendant, the death of the insured, and that "said insured prior to, and the said beneficiaries since, said death have done and performed all the terms and conditions of said contract to be done and performed by them and that the said sum of Five Thousand Dollars ($5,000), on said 10th day of July, 1932, became due and payable" to the beneficiaries named thereunder, and that demand for payment had been made, and that defendant had refused to pay same and had denied liability under said insurance contract; and further alleged the assignment of the policy to the plaintiffs.

The answer contained a plea in abatement, in which it was alleged the defendant was an insurance corporation organized under the laws of the State of Iowa, and was, during all of the times mentioned in the petition, duly licensed and authorized to engage in the insurance business in the State of Iowa, the State of Missouri, and many other States; that the policy sued upon was executed in Iowa to the insured who was at the time a resident of the State of Iowa; that the beneficiaries in the policy moved to Illinois and were residing in Illinois at the time the insured died and were, at the time of the death of the insured and are now, residents of the State of Illinois; that the cause of action arose outside the State of Missouri; that one of the plaintiffs is a resident of Missouri and the other is a resident of the State of Iowa; and "that the attempted assignment of said policy of insurance and any rights contained thereunder or cause of action in

connection therewith, and the bringing of this action in the State of Missouri is an attempt on the part of said plaintiffs and their assignors to make use of the courts of the State of Missouri to deprive the defendant of judicial process, by which it may procure the attendance of witnesses on its behalf in defense of the merits of said action, and to wrongfully, fraudulently and unlawfully attempt to give this court jurisdiction of and over the person of said defendant, and to unlawfully compel it to defend said action in this court when said court is without jurisdiction of the person of said defendant," and for the foregoing reasons the said court had no jurisdiction over the person of the defendant.

Answering to the merits, defendant admitted the death of the insured on July 10, 1932, but alleged the policy was forfeited for failure to pay the premium due on October 28, 1931, and for failure to pay a policy loan of $623. Defendant further alleged that in consideration of the payment to defendant by the insured or $35.27, the date for the payment of the premium due on October 28, 1931, was extended to June 28, 1932, and that said extension agreement provided that if said premium was not paid on or before the extended date all rights under the policy would be the same as if said extension agreement had not been made, and in case of extended insurance the period such insurance would commence to run would be from the due date of the premium set forth on the face of the policy, excluding days of grace; that no part of said premium due on October 28, 1931, had ever been paid, and that said policy loan had not been paid, and that the failure to pay said premium and to pay said policy loan rendered the insurance null and void.

Plaintiffs' reply contained a general denial of every allegation controverting the allegations of plaintiffs' petition. Plaintiffs further pleaded in their reply various statutes of Iowa against discrimination between persons insured in the same class and expectancy as to rates charged for policies of insurance, etc., and the requirements under Iowa law as to the notice and sale of pledged property held as security for the indebtedness of the insured, and various decisions of the Supreme Court of Iowa holding that an insurer receiving a premium is required to provide a full period of insurance corresponding to the premium paid, and that where an application provided no insurance should be in effect until the application is approved and the policy delivered, there is no insurance until the said conditions are effected. Plaintiffs further alleged in their reply that the policy provided that after the payment of the premium for three full years, upon failure to pay any premium falling due thereafter, said policy would become and continue as a policy and contract of paid up extended insurance for such period as the value of said policy would provide, and that "*if Isador L. Siegel failed to pay any premium, required by said policy, the same was in force and effect at the date of his death, as a*

*contract and policy of paid up extended insurance,"* and plaintiffs further alleged in their reply that *"if Isador L. Siegel by an application for the privilege of paying any premium late, agreed, in case of extended insurance, the same commences to run from the original due date of the premium set forth on the face of the policy, excluding days of grace, such agreement by him (is) without consideration invalid, void and of no effect."*

Upon a trial of the case, the court, after hearing defendant's evidence on its plea in abatement, overruled same.

On a trial of the merits, the plaintiff introduced in evidence the policy; proved that the insured died on July 10, 1932; proved the assignment of the policy of insurance and the cause of action in connection therewith by the beneficiaries under the policy to the plaintiffs herein; introduced in evidence the above-mentioned letter of July 15, 1932, from the defendant company to Mrs. Sarah Siegel denying liability under the policy. Upon this proof, plaintiffs rested their case. Thereupon, the court gave an instruction in the nature of a demurrer to the evidence, whereupon plaintiffs took an involuntary nonsuit with leave to move to set same aside. The record is silent as to the theory on which the trial court gave the peremptory instruction in favor of the defendant. In due time, plaintiffs filed a motion to set aside said involuntary nonsuit, which motion was overruled. This appeal follows.

In consideration of any appeal, it is the duty of this court, whether the question is raised or not, to examine the record to determine whether we have jurisdiction. In this case, defendant makes the contention that the record fails to show any judgment of the trial court from which an appeal to this court would lie and, on this ground, urges that this court is without jurisdiction to try and determine the issues on this appeal. Assuming the correctness of defendant's contention as to the state of the record in this respect, the law is well-settled that plaintiff had no right of appeal in this case and that, consequently, this court is without jurisdiction. The right of appeal did not exist at common law; this right is purely statutory. As to circuit courts, appeals lie therefrom only in cases specified by section 1018, Revised Statutes of Missouri, 1929. A motion to set aside an involuntary nonsuit is, in effect, a motion for a new trial. The above statute allows an appeal from an order sustaining a motion for a new trial or, as in this case, a motion to set aside an involuntary nonsuit, but does not provide for an appeal from an order *overruling* any motion to set aside an involuntary nonsuit. [Boyd v. Logan-Jones Dry Goods Co., 74 S. W. (2d) 598.] If, therefore, the record in the case at bar discloses no final judgment of nonsuit, or order dismissing the case, or discharging the defendant, it would follow that this court has no jurisdiction herein and the appeal would have to be dismissed. [Harrison v. M.-K.-T. R. Co.

(Mo.), 87 S. W (2d) 169; Harriman v. Stix, Baer & Fuller Co. (Mo.), 92 S. W. (2d) 593; Bueker v. Aufderheide et al. (Mo.), 111 S. W. (2d) 131.] Following a recital that the trial was had on February 10, 1937, the record before us discloses the following:

"Thereafter and on the 10th day of February, 1937, a trial of the issues made upon appellants' petition, respondent's answer and appellants' reply was had in said court before said Judge and a jury, and at the conclusion of the taking of evidence on the part of the appellants, the said court by an instruction in writing, directed the said jury to find a verdict for the respondent upon the issues before it; whereupon appellants were duly granted an involuntary nonsuit with leave to move to set the same aside; all as appears from an entry duly made on the records of said court at said time, the judgment of involuntary nonsuit so rendered, formal parts omitted, being in words and figures, as follows:

"Now on this 10th day of February, 1937, this cause coming on regularly for trial before the court, come the plaintiffs by their attorneys and the defendant by its attorney and also comes the jury of twelve good and lawful men duly empaneled and sworn to try this cause, whereupon the trial of the cause is begun and the plaintiffs having introduced their evidence and having rested their case, the defendant by its counsel did tender to the court an instruction in writing directing a verdict for the defendant under plaintiffs' evidence and the court having given said instruction, the plaintiffs thereupon by leave of court took an involuntary nonsuit with leave to move to set the same aside within four days.

"*It is therefore by the court in accordance with the involuntary nonsuit suffered by defendants, adjudged that plaintiffs be nonsuited and their petition dismissed.*"

The record further discloses that on February 12, and within four days of the rendition of said judgment, and at the same term of court, plaintiffs (appellants) filed their motion to set aside said involuntary nonsuit, and that on February 19, at the same term of court, plaintiffs' motion to set aside the involuntary nonsuit was by the court overruled; that on February 23, 1937, and during the same term of court, plaintiffs filed their application and affidavit for appeal and that on March 1, 1937, filed in this court certified copy of the judgment appealed from and the order granting the appeal.

In the short-form transcript so filed by plaintiffs appears a certified copy of the judgment referred to in the record, together with certified copy of the order allowing the appeal. The order allowing appeal recites that the appeal is granted "from the nonsuit in this cause." We think it must be clear that there was a final judgment of nonsuit and dismissal of the case entered by the trial court from which an appeal lies and from which plaintiffs did appeal, and we so hold.

Defendant makes the contention that under the state of the pleadings, plaintiffs' evidence did not make a *prima-facie* case, and that therefore the trial court properly gave an instruction in the nature of a demurrer to the evidence. It is defendant's contention that plaintiffs' reply admits the allegations in the answer as to non-payment of the premium of October 28, 1931, and admits the policy loan of $623, and the non-payment of said loan or any part thereof, and that hence the evidence adduced by plaintiffs on the trial of the case did not make a *prima-facie* case. We do not so construe the reply. The petition, in effect, pleads that everything required by the insured to be done in order to keep the policy in full force and effect was done. The reply contains a general denial of every allegation in the answer controverting any allegation of the petition. It nowhere admits the non-payment of the premium due on October 28, 1931, nor the existence of the policy loan, nor, if such was made, the non-payment thereof. The reply does not relieve defendant of the burden of establishing these defenses by adducing evidence thereon. The reply alleges facts which, if proved, would afford the basis of the contention that the policy was in full force and effect even if plaintiffs' allegation as to non-payment of premium and of policy loan were true.

There being no admission by plaintiff that the insurance was forfeited for the alleged non-payment of a premium and non-payment of a policy loan, the burden of adducing evidence to meet the *prima-facie* case made by plaintiffs was upon defendant. This is well-established by the decisions of this State. In Harris v. Security Life Ins. Co. of America, 154 S. W. 68, 248 Mo. 304, defendant made the contention that it was incumbent upon the insured to make proof of the full payment of all premiums on the policy at the time of the death of the insured. The payment of the first premium was admitted but the record disclosed no positive proof of the payment of the second premium. In passing upon this question, the court said:

"Under these circumstances the production of the policy, together with proof and due notice of the death of the insured, made a *prima-facie* case for respondent, and cast upon the defendant the burden of showing whether any premium was unpaid at the death of the insured. [Citing cases.]"

To the same effect is the case of Smith v. Ohio Millers Mutual Fire Ins. Co., 49 S. W. (2d) 42, wherein the court said:

"An exception to the common-law rule places the burden on defendant of proving non-payment of the premium for life insurance because the insured is dead, and information as to payment is peculiarly within the knowledge of the insurer.

"In life insurance cases, this exception was cited as authority for placing the burden of proving non-payment of premium on defendant [Citing cases.] . . . In an action on a life insurance policy (Johnson v. Woodmen of the World, 119 Mo. App. 98, 95 S. W. 951),

the statute was cited as authority for holding that the defense of non-payment of the premium was an affirmative defense, and the burden as to that issue was on defendant.

"Under the statute, all written contracts for the payment of money or property 'import a consideration,' and the burden of proving failure of consideration for such contracts is on defendant. [Citing Cases.]"

Furthermore, even if the reply were susceptible of the construction urged by defendant, the fact of non-payment of the premium due October 28, 1931, and the non-payment of the policy loan would not necessarily establish a forfeiture of the policy. The petition alleges, in effect, that everything required to be done by the terms of the policy to keep same in effect, had been done. The policy provides for extended insurance after the payment of the first three annual premiums. The answer, by charging default as to only the seventh annual premium, in effect admits the payment of the six prior annual premiums. On October 28, 1931, the date of alleged default in payment of the premium, it must be conceded that the policy had extended insurance value. The amount thereof with respect to the amount of the policy loan or the amount of any balance found to be due thereon, would be a question for determination upon trial.

It should be further noted that the policy provided that failure to pay the policy loan or interest thereon would not void the insurance unless the total indebtedness exceeds the loan value at the time of such failure "nor until thirty-one days after notice shall have been mailed by the company to the last known address of the insured." A forfeiture of the policy on the basis of a failure to pay the loan would, therefore, appear to be conditioned upon defendant's giving the notice as required by the above provision of the policy. Under such circumstances, it was held in McDonnell et al. v. Hawkeye Life Ins. Co. of Des Moines, Iowa, 64 S. W. (2d) 748, that:

"The defense that the policy became null and void prior to the death of the insured on account of the claim that the indebtedness on the policy exceeded the loan available thereunder, likewise failed."

We must conclude, therefore, that under the pleadings and the evidence, plaintiffs made a *prima-facie* case.

It is defendant's contention, however, that the trial court erroneously overruled its plea in abatement, which put in question the court's jurisdiction over the person of defendant. While we are mindful of the rule that a party, not appealing, will not be heard in an appellate court to urge a review of errors committed against him in the trial court, this rule has its exceptions. As was said in the case of St. Charles Savings Bank v. Denker, 275 Mo. 607, l. c. 621, 205 S. W. 208, l. c. 212:

"A respondent cannot have the advantage of errors committed by the trial court for the purpose of modifying in any manner the judg-

ment in his favor. But it is generally held that the respondent on appeal may attack the rulings of the trial court which are erroneous *for the purpose of sustaining his judgment.*"

Referring to the judgment of the trial court as hereinabove set out, it will be noted that the court "adjudged that plaintiffs be nonsuited and their petition dismissed." Whether this judgment of nonsuit and dismissal of plaintiffs' petition be based upon the ground assigned by the court or upon the ground that the court had no jurisdiction of the person of the defendant, the ultimate result is the same. If a proper ruling by the trial court as to jurisdiction of the person of the defendant should require a dismissal of this particular suit, then such ruling would sustain the court's judgment rendered herein nonsuiting the plaintiffs and dismissing their petition. It is our conclusion therefore that the exception to the general rule is applicable here, and that it is our duty to pass upon the ruling of the court as to the jurisdiction of the defendant. [See, also, City of Cape Girardeau v. Goehring, 12 S. W. (2d) 761; O'Connell v. Dockery et al., 102 S. W. (2d) 748, 1. c. 750.]

In support of its position, defendant contends that "Section 5894, Revised Statutes of Missouri, 1929, does not authorize service on foreign insurance companies licensed to do business in Missouri on causes of action accruing in and instituted by citizens of other States on policies issued or business transacted in foreign States;" that this is actually a suit by citizens of other States inasmuch as the beneficiaries under the policy sued on are, in fact, plaintiffs herein since the assignment of the policy to the nominal plaintiffs was made without consideration and for the mere purpose of invoking the jurisdiction of the circuit court of this State; and that said assignment is a mere sham and constitutes a fraud upon the laws of this State, and that to concede the effectiveness of said assignment "would be to nullify the statute and the decisions of the appellate courts thereunder and permit that to be done indirectly which could not be done directly."

Unquestionably, the beneficiaries under the policy had the lawful right to assign said policy and the cause of action thereon to whomsoever they pleased, and the fact that the assignment was not for a valuable consideration would not affect its validity. In Young v. Hudson, 12 S. W. 632, 99 Mo. 102, 1. c. 106, the court, in passing upon the validity of an assignment regular upon its face and made without consideration for the purpose of the assignee collecting the assigned indebtedness for the use of the assignors, held that:

"An assignee of a chose in action, arising out of contract, may sue upon it in his own name, though the title was passed to him only for the purpose of collection." [See, also, 47 C. J. 35, sec. 71.]

The assignment in the instant case was regular upon its face and a final judgment in this suit in favor of either the plaintiffs or the defendant would constitute a bar to any further action on this policy

by the beneficiaries named therein. We hold, therefore, that regardless of the motive inducing the assignment of this cause of action to plaintiffs, the assignment was valid and gave to the assignees the right to maintain a suit thereon.

Section 5894, *supra,* provides that service may be obtained upon a foreign insurance company by service of summons upon the superintendent of the insurance department and "shall be deemed personal service upon such company *so long as it shall have any policies or liabilities outstanding in this State.*" In the case of State ex rel. Insurance Co. v. Landwehr, 318 Mo. 181, l. c. 189, it is held that:

"Policies outstanding in this State necessarily include policies written outside of this State which are owned and held by residents of this State at the time suit is instituted thereon."

The policy in question was written in the State of Iowa, and at the time of the death of insured he was then a resident of Illinois, and the beneficiaries named therein were, as the time of insured's death and at the time of the institution of this suit, residents of the State of Illinois, but upon the assignment of this policy and cause of action thereon to a resident of Missouri, it became, under the holding in the Landwehr case, a policy outstanding in this State.

From a study of the opinion in the Landwehr case, it would appear that the court construed said service statute as requiring that a suit be based on (1) a policy issued and outstanding in Missouri, *or* (2) a policy issued outside of Missouri but owned and held by a resident of this State. Under this construction of the statute, it is clear that the instant suit might be instituted in this State and service of summons had therein under the provisions of section 5894. However, in the case of State ex rel. Phoenix Mutual Life Ins. Co. v. Harris, 121 S. W. (2d) 141, the Supreme Court by an opinion en banc, decided October 29, 1938, has repudiated the construction of the statute in the Landwehr case and now holds (l. c. 145) that:

"In our view, the section requires that the suit must be based on: (1) a policy issued or liability incurred in Missouri while the company was licensed to do business here; (2) *and* (not *or*) the policy or liability must be outstanding in this State in the sense of being due here."

Continuing, the court said (l. c. 146):

"We believe the statute regards a policy issued in Missouri as outstanding in this State so long as it remains in force covering the life, person or property in this State. *This construction would exclude policies issued in other States,* and also policies issued in this State on persons or property outside of or removed from this State." (Italics ours.)

And, at page 147, the court specifically overrules the case of State ex rel. American Central Life Ins. Co. v. Landwehr, *supra,* with respect to the construction of the statute hereinabove referred to. Under

the construction of the statute in the Landwehr case, service of summons could properly be had in the instant suit under section 5894, but in view of the decision in State ex rel. v. Harris, *supra,* we are compelled to hold that since the policy of insurance was not issued in Missouri, service of summons in a suit thereon cannot be had under the provisions of section 5894, Revised Statutes Missouri, 1929, and the attempted service thereunder is void, and that in said suit the court acquired no jurisdiction of the person of defendant by virtue of such attempted service of summons.

Plaintiffs, however, contend that regardless of the question of validity of service of summons upon the defendant, the defendant, at the close of plaintiffs' case, requested the court to direct the jury to return a verdict in its favor and hence sought affirmative relief and by so doing submitted itself to the jurisdiction of the court, and cannot thereafter be heard to say the court was without jurisdiction. With this contention we cannot agree. The defendant consistently maintained its position that the court had no jurisdiction of its person and at no time entered its general appearance. Defendant based its plea to the jurisdiction of the court over its person upon the allegation that the defendant was a citizen of the State of Iowa and that the cause of action declared upon in plaintiffs' petition was based upon a policy of insurance issued in the State of Iowa and that at the time of the death of the insured, he and the beneficiaries named therein were residents of the State of Illinois, and that the assignment was without consideration and was made for the sole purpose of making use of the courts of the State of Missouri to deprive the defendant of judicial process by which it might procure the attendance of witnesses on its behalf in defense of the merits of the action and was an attempt to fraudulently give to the Missouri court jurisdiction of the person of the defendant. There were matters alleged in the plea in abatement which did not appear in the record proper and which, therefore, could not be raised by demurrer or by motion to quash service. When the challenge to the jurisdiction of a court is based upon facts *dehors* the record, it, of course, cannot be raised by either demurrer or a motion to quash the service but must be made by the plea in abatement set out in the answer.

Section 768, Revised Statutes of Missouri, 1929, provides that "the only pleading on the part of the defendant is either a demurrer or an answer," and it has been uniformly held that where the jurisdiction is challenged on the basis of alleged facts not of record, it is proper for the defendant to unite in his answer matter in abatement and matter in bar. [Christian v. Williams, 111 Mo. 429, l. c. 443; Roberts v. American National Assur. Co., 201 Mo. App. 239, l. c. 243.]

In Mertens v. McMahon, 66 S. W. (2d) 127, it was held (l. c. 133) that:

"Our Code contemplates but one answer, which must contain all

the defenses, and therefore the coupling of a plea to the jurisdiction which must be raised by answer, with a plea to the merits, does not waive the matter of jurisdiction. [Citing cases.]''

The same procedure was followed in the instant case as that pursued in Mertens v. McMahon, *supra*. In this case, as in the Mertens case, there was first a trial on the plea in abatement at which the defendant introduced evidence in support of his plea. And in this case, as in the Mertens case, upon the overruling of the plea in abatement, the court proceeded with the trial upon the merits. In the Mertens case, *supra*, it was held that the defendant by participating in the trial on the merits, so long as he did not take any affirmative action in the case, such as asking for change of venue or asking for continuance of the whole case, or seeking affirmative relief by filing a counterclaim did not, by thus participating in the trial of the merits on the issues raised by the answer, having thus limited his appearance, thereby waive his challenge to the jurisdiction of the court over his person (see page 134 of the opinion). In the Mertens case, the Supreme Court held that (l. c. 136) :

''Our conclusion is that the mere fact that a defendant participates in the trial on the merits after his plea to the jurisdiction, properly raised by answer, and having limited his appearance for that purpose only, has been ruled against him, does not amount to a general appearance in the case so as to waive the jurisdictional question. Such is the rule in attachment cases when pleas in abatement are filed. [Citing cases.]''

In the instant case the matters set out in defendant's plea in abatement involved facts not then appearing from the record. It is our conclusion that under the authority of Mertens v. McMahon, *supra*, the defendant did not, by participating in the trial of the case, waive its challenge to the jurisdiction of the court over its person and did not thereby submit itself to the jurisdiction of the court.

Plaintiffs make the further contention, however, that defendant, by requesting at the close of plaintiffs' case an instruction in the nature of a demurrer to the evidence, thereby sought affirmative relief on its part and by so doing submitted itself to the jurisdiction of the court. In support of this contention, plaintiffs cite the case of Robinson v. Field, 117 S. W. (2d) 308. This case clearly is not an authority for this contention inasmuch as in the Robinson case the defendant there filed a counterclaim or cross-bill seeking affirmative relief. Under such circumstances, the court there held that (l. c. 318) :

''Here, both parties requested the circuit court of Clinton county to determine the amounts due between them. When defendants filed a cross-bill or counterclaim seeking affirmative relief of judgment for an additional amount, in a suit which necessarily involved the question of whether or not they had already been paid in full, when

plaintiff generally denied the claims made in the cross-bill, and when both parties entered into a trial on the merits of all issues, should either thereafter be heard to say that the court was then without such jurisdiction? We think not."

This presents an entirely different situation from anything done by defendant in the case at bar. In requesting a demurrer to the evidence it was not asking for affirmative relief, but asking that the court find that no case had been made against the defendant.

Defendant makes the further point that its plea of *res judicata* set up in its answer should have been sustained. Since we have ruled that the court acquired no jurisdiction of the person of the defendant, it becomes unnecessary to pass upon this question.

It follows that the judgment of the trial court in dismissing this case was correct, but that the ground therefor as recited in said judgment is erroneous. In this connection, it should be noted that this is a judgment of nonsuit and hence finally disposes of this particular suit, but is not a final judgment upon the merits and hence is not *res judicata* as to the cause of action. [State of Missouri to the use of Goodman v. Regent Laundry Co., 196 Mo. App. 627, l. c. 637; Wiethaupt v. St. Louis, 158 Mo. 655, l. c. 659; Mason v. K. C. Belt Ry. Co., 226 Mo. 212.]

Judgment affirmed. All concur.