## ARMOUR & CO v YOTER

Ohio Appeals, 2nd Dist, Franklin Co

Decided Aug 19, 1931

Addison & Crooks, Columbus, for Yoter, plaintiffs in error.

C. H. Valentine, Columbus, for Armour & Co., defendant in error.

LEVINE, PJ (8th Dist), and ALLREAD and HORNBECK, JJ (2nd Dist) sitting.

LEVINE, J.

There are two sections of the General Code which bear upon the allegations of negligence found in the petition, as follows:

"Sec 6310-22 GC. Drivers of vehicles, before turning, stopping or changing their course, shall make sure such movement can be made in safety and shall cause signals to be made of their intention in a way visible outside the vehicle."

"Sec 6310-27 GC. No vehicle shall stop on any road or highway, except with front and rear right wheels within one foot of the right hand side of the improved portion of the road, nor in any such way as to obstruct a free pasasge of the road; provided that nothing in this section shall be held to apply whenever a driver of a vehicle is compelled or permitted to stop by reason of other lawful regulations, or emergency."

A perusal of the record discloses, that there is evidence to sustain the allegations of the petition to the effect that the motor truck, driven by the employes of plaintiffs in error, brought said motor truck to a complete stop, without making certain that the same could be made in safety and without causing signals to be made of his intention to so stop.

Plaintiffs in error urge that a presumption of negligence on the part of defendant in error arose from the evidence presented in his behalf; that he was therefore required to produce sufficient evidence to meet or equalize the inference of said presumption of negligence and that he failed so to do. At the close of the plaintiff's testimony, and again at the close of all the testimony, a motion was addressed to the court asking that a verdict be directed in favor of both plaintiffs in error. It is claimed that if the plaintiff, at the close of his own evidence, had not sufficiently met the presumption of negligence arising therefrom, that a mere scintilla of evidence was not sufficient to take his case to the jury; that the scintilla rule which compels the submission of the case to the jury is applicable only where no inference of negligence is to be drawn from his own testimony.

In this connection plaintiffs in error ca'l the court's attention to what they term the well known physical fact. The driver of the motor truck stated that his motor truck had been parked off the traveled portion of the highway a sufficient length of time to adjust the canvass on the truck and that his truck was parked while standing still with the right wheels on the berm of the highway, in broad daylight, and that there was no traffic to prevent plaintiff from driving around his car.

Plaintiff's evidence is to the effect that the roadway was blocked and that the motor truck was brought to a complete stop somewhere near the center of the improved portion of the highway. The court's attention is then directed to a fact appearing in the record, namely, that the motor truck was knocked and pushed a distance of twenty feet, and it is claimed that this physical fact demonstrates that the defendant in error was driving at an excessive rate of speed behind this truck. At this point it may be observed that the driver of the truck testified that the truck was pushed ten or twelve feet only.

Our attention is directed to what plaintiffs in error term the law of physics, namely, that momentum, which is the force acquired by a moving body, is determined by a multiplication of the speed and the weight of the body. Another law of physics is called attention to, namely, that a body at rest has no momentum, so that for a lighter body to give momentum to another body at rest must strike it with sufficient velocity that the weight of the moving body multiplied by its speed will equal the weight of the standing body multiplied by its speed. In other words, the momentum of the moving body must initiate the momentum to the standing object. It is argued that with these physical laws of which the court should take judicial notice, it would be im-

possible for a light weight Nash sedan about one-fourth or less of the weight of the motor truck after its momentum had been reduced by the application of the brakes, and it has already skidded twenty feet, to give sufficient momentum to this truck four times the weight of the sedan to knock it a distance of twenty feet, with its brakes set, if the sedan was moving at no greater rate of speed than fifteen or twenty miles per hour. In other words, that the physical facts proved conclusively that plaintiff's car was operated at an unreasonable and excessive rate of speed.

It must be kept in mind, however, that the defendant in error's case supported by evidence proceeded upon the theory that the driver of plaintiffs in error's motor truck brought the same to a complete stop, while said motor truck was on the improved portion of the highway. The fact that the brakes of the motor truck were set was testified to by the driver of the motor truck and by no one else. The physical laws of which our attention is directed would have no application if the brakes of the motor truck were not set. The jury apparently disregarded the testimony of the driver of the motor truck to the effect that he was on the unimproved portion of the road, and having disregarded his version of the occurrences, the jury was justified in disregarding his statement to the effect that the brakes of the motor truck were set. Since the jury adopted the version given by plaintiff, namely, that while on the improved portion of the highway the motor truck driven by the employee of plaintiffs in error was brought to a complete stop, and disregarding the version given by the driver of the motor truck, the finding of the jury in favor of plaintiffs is not in any way contradicted by the physical laws alluded to, because if the brakes of the motor truck were not set it would take but slight pressure from the rear to cause the motor truck to move a distance of twenty feet.

A great deal of space is devoted in the briefs of plaintiffs in error to a discussion of an alleged error in the general charge of the court. The court read to the jury §6310-27, GC, part of which reads as follows:

"No vehicle shall stop on any road or highway except with the front and rear right wheels within one foot of the right hand side of the improved portion of the highway."

Following the reading of the law the court used this language:

"Now the positive act in that section is the stopping with the right wheels—that is, the requirement is that the stopping shall not be done with the right wheels further away from the right hand side of the road than one foot and the obstruction of the passage in that respect; that is, to stop with the right wheels further than one foot from the side of the road is negligence."

It is contended by plaintiffs in error that under the wording of the statute a vehicle may be stopped on any road or highway within one foot of the right hand side of the improved portion of the highway; that when the court stated that to stop a vehicle with the right wheel further than one foot from the side of the road is negligence, that prejudicial error was committed by the court in giving this charge, because it was the contention of the defendant that he did stop with his right wheels more than one foot from the traveled highway, and that he drove clear off of the highway so that his right front and rear wheels were more than a foot from the traveled portion of the highway; and that under the charge of the court this would constitute negligence on the part of the driver.

As plaintiffs in error interpret the charge of the court, it is to the effect that a vehicle must stop on the traveled portion of the highway, or at least so close to the traveled portion of the highway, that the right wheels are not more than one foot from the traveled portion, and that if one drives off the traveled portion of the highway, and further than one foot away from the traveled portion of the highway, one is guilty of negligence as a matter of law.

Counsel for defendant in error contends that the legislative intent, as expressed in §6310-27, GC supra, has to do with the stopping of the car on that part of the highway used for travel, namely, the improved portion of the highway; that one stopping a car is obliged to get far enough to the right that his front and rear wheels are not more than one foot to the left of the right hand side of the improved portion of the road.

The language of the statute in our opinion is somewhat confusing. It would seem that the phrase "road or highway" as used in said section refers to the improved portion of the highway. The statute contemplates that one desiring to stop on said highway must move over until the front and rear right wheels of his vehicle are within one foot of the right hand side of such improved portion of the highway.

There is no inhibition not to stop a ve-

hicle on the unimproved portion of the highway. It will, however, be noted that the verdict of the jury was a general verdict; that no interrogatories were submitted to the jury to test the general verdict. For this reason, even if it be assumed that the court's charge was erroneous in its interpretation of §6310-27, GC, the jury might very well have based its finding of liability on the ground that the driver of plaintiff in error's motor truck while on an improved portion of the highway, brought the motor truck to a complete stop without making it reasonably certain that the same could be done in safety and without having given a signal of his intention so to do.

Under the "two-issue rule" so often reiterated by the Supreme Court of Ohio, said error of the trial court, assuming that it was error, would not be a ground for disturbing the verdict, since the same was a general verdict and there were no interrogatories submitted to the jury in order to test said verdict.

Another important assignment of error is that there was error in rendering a verdict against both defendants. It is claimed that there are no facts in the record which tended to show that these two distinct corporations had joint control of the driver of the truck, nor was there any evidence tending to show that these joint defendants were engaged in a joint enterprise, and also there was no evidence tending to show that they jointly owned the truck.

The amended petition alleged "that on or about the 28th day of September, 1926, plaintiff was traveling easterly on the National Pike in his own car, which was at the time driven by one Charles Simpson, and that he was traveling with him as a guest, and that the defendants at the time were the owners of a motor truck which they were at that time operating in the same direction and on the same road, and a short distance in front of plaintiff's car, and that the defendants so carelessly and negligently operated said motor truck as to cause it to come to a complete stop in the direct line of the east bound traffic of said road, etc., and so as to cause to make said car to collide with it."

Did the defendants own the truck? Was the driver of the truck an agent of the defendants and acting within the scope of his duty?

The record discloses that Yoter's counsel experienced great difficulty in eliciting information on that subject. The local manager, Mr. Dever, of Armour & Company was called as a witness by plaintiff. He was served with a subpoena duces tectum, ordering him to bring the documents and records having reference to the subject matter under investigation into court. He claimed that he did not have any such documents and records, that he had never seen any such and that none were available. According to the statement of Mr. Dever he was the local manager in charge of all the Armour & Company business in central Ohio; that he only knew that he worked for Armour & Company; that he had no idea as to who they were beyond the fact that they were a corporation, and whether a Maine corporation, a Kentucky corporation, or a corporation under the laws of some other state, he did not know.

Mr. James F. Hurd, from the office of the Secretary of State of Ohio was called as a witness for the plaintiff. He brought into court the foreign corporation records marked as plaintiff's exhibits one and two. He stated that the record showed but two corporations under the name of Armour & Company; that one of these is a foreign corporation organized under the laws of the state of Maine, and the other is a foreign corporation organized under the laws of the state of Kentucky; that both of said corporations had been authorized to do business in Ohio, and that both had designated the same as their agent upon whom summons may be served. When this action was brought and service had, the agent so named was A. A. Anderson.

Mr. Edwin V. Patterson of the Bureau of Motor Vehicles was next called as a witness. He stated that all the records of licenses issued in the year 1926 have been destroyed. This, of course, made it impossible to check up on the license tag number of the truck in question.

Mr. Howard S. Gorman, deputy county clerk, was next called as a witness. He brought into court a sworn statement of ownership showing that an International truck was the property of Armour & Company. It also showed that the owner is located at No. 97 West Chestnut street, Columbus, Ohio. The driver of the truck in his direct examination referred to his truck as an "International."

He stated on cross examination that it was an International truck. He also stated that he drove the truck on the day of the accident from the Armour & Company plant at No. 97 West Chestnut street, Columbus, Ohio. On cross examination he stated that a man named Simmons who was a shipping clerk at this Armour &

Company plant at No. 97 West Chestnut Street, sent him on that day with a load of meat from the Armour & Company plant at 97 West Chestnut Street to Zanesville.

In other words there is sufficient evidence in the record to show that the International truck belonged to Armour & Company; that it proceeded from the Armour & Company's plant located at No. 97 West Chestnut street on the way to Zanesville. Both corporations Armour & Company organized under the laws of Maine and Armour & Company organized under the laws of the state of Kentucky, were authorized to do business in Ohio and designated as their agent upon whom process may be served A. A. Anderson, who, as the record disclosed, was formerly in charge of the Armour & Company's business.

It seems to us that a great deal may be inferred from the failure of plaintiffs in error to present evidence to show which Armour & Company owned the truck, and which Armour & Company employed the driver. The failure to produce evidence peculiarly within the knowledge of plaintiff in error is a rather eloquent fact in itself and, in our opinion, the jury was not straining the evidence, if it found that this separate existence of two corporations, one organized under the laws of Maine and the other organized under the laws of Kentucky, was technical only in its character, and that as a matter of fact whatever business Armour & Company was doing in Ohio, and particularly in the plant located at No. 97 West Chestnut Street, was a joint enterprise.

In a case such as presented by the record it properly becomes the burden of the defendants to furnish information as to the ownership of the truck and the employment of the driver. Were the rule otherwise it would result in defeating righteous claims resulting in the wrongful acts of employes of either company.

Another assignment of error is to the effect that the court abused his discretion in permitting the bailiff of the court, who was a witness in the case, to remain in the court room, after a request had been made for a separation of witnesses. An examination of the record discloses that the court's attention was called by counsel for Yoter to the fact that opposing counsel asked for a separation of witnesses, that the bailiff had been subpoenaed by them and that he might be called upon to testify as a witness. The court then stated: "Well I guess we will have to keep him in court." No objection was made by opposing counsel.

The failure to object waived whatever rights in that respect plaintiffs in error could have claimed had they objected.

The veiled charge that the trial judge was guilty of partiality in that he interrogated witnesses does not seem to us of much moment. Trial judges should not be relegated to the position of umpires only. A trial judge has an active duty to aid in eliciting the truth, in order that the verdict of a jury may at least approach the ends of justice. We deem it rather laudable on the part of the trial judge within reasonable limits to clear up any doubts which may arise in the statements of witnesses. In our opinion the criticism of the trial judge in that respect is unfounded.

The record presents a case which was fairly tried and in our opinion substantial justice was done.

Judgment affirmed.

ALLREAD, PJ, and HORNBECK, J, concur.