*503
 
 Matthias, J.
 

 The question here presented is whether the verdict and judgment are contrary to law, it being the contention of counsel for plaintiff in error that there was no evidence to support the charge that the sale of the article of food in question was violative of Section 12760, General Code, and hence constituted negligence
 
 per se.
 
 The provisions of that section are as follows: “Whoever sells, offers for sale or has in possession with intent to sell, diseased, corrupted, adulterated or unwholesome provisions without making the condition thereof known to the buyer, shall be fined not more than fifty dollars or imprisoned twenty days, or both.”
 

 In the case of
 
 Portage Markets Co.
 
 v.
 
 George,
 
 111 Ohio St., 775, 146 N. E., 283, this court had before it a case involving facts quite similar to those presented by the record in the instant case. It was there announced in the syllabus that£ £ The violation of the pure food laws of this state by the sale of unwholesome meat is negligence
 
 per se,
 
 and may be the basis of recovery for damages by the user of said unwholesome meat, who suffers injury proximately resulting therefrom, provided the user is not himself guilty of negligence in the care, preparation, cooking, or in any other manner which contributes directly to his injury.” There was no averment and no proof, nor could there be a rational inference drawn from the evidence adduced, of contributory negligence upon the part of the plaintiff. Concisely stated, our only question is whether a charge of the sale of food in violation of the statute may be established in the absence of proof of its unwholesomeness by chemical analysis or bacteriological examination. It must be conceded that unwholesomeness is not a quality to be attributed to food just because it “disagrees” with the person eating it, as the resulting effect is ordinarily stated. The language of the statute contemplates that the unwholesomeness
 
 *504
 
 prescribed shall consist of a diseased, corrupted, adulterated or other condition having the effect of rendering such food deleterious to the health of normal persons generally.
 

 There is evidence in the record in effect that the pork sausage in question was purchased by the plaintiff at one of the retail stores of the defendant after being assured that it was strictly fresh. The purchase was made shortly after noon. By reason of the intended absence of her family and the fact that she had no means of refrigeration, and the further fact that it did not appear entirely fresh, she cooked the sausage and cold-packed it by putting it in glass jars, with the exception of a patty, which she “fried thoroughly” and ate in the form of a sandwich. This was between one and two o ’clock on the same day. During the afternoon she became ill, later becoming extremely thirsty and dizzy, which condition was followed by nausea, violent vomiting and diarrhea, which continued into the following day when a doctor was called, who administered a hypodermic of morphine. Hemorrhoids and hernia later developed. These were attributed to the violent and severe spells of vomiting. Medical treatment was required for several months.
 

 The record disclosed that for several meals previous to the incident in question the diet of plaintiff and other members of the family had been the same; that no others had partaken of the sausage, and none except plaintiff had become ill. The diagnosis of the attending physician was “food poisoning or food infection.” He made no bacteriological analysis or examination, either of the sausage or the stool or contents of plaintiff’s stomach, but based his diagnosis and his testimony at the trial upon the symptoms observed by him and the history of the case and development of conditions related to him. The record discloses that a representative of the defendant’s legal department
 
 *505
 
 procured a portion of the cold-packed sausage for analysis and delivered it to a city laboratory for that purpose ; but such service was refused because of the controversy involved. It was later taken from the laboratory by a doctor acting for the defendant and thrown away — without making any analysis.
 

 There was evidence that the plaintiff was in normal condition previous to the time in question and did not suffer from any of the infirmities above recited. That the sausage caused plaintiff’s illness may be properly inferred from the fact which the evidence tends to show that other persons had partaken of the same food as did plaintiff, with the exception of the sausage, for the full period during which poisoning from food would develop. That the sausage caused such illness in one whom the evidence tends to show was in a natural and normal condition, with presumably natural and normal functions of the body, in the absence of evidence to the contrary, is surely some proof that the sausage was unwholesome and deleterious to health. This is not a situation where inference is based upon inference, but separate and distinct inferences drawn from facts proven or presumed to exist in the absence of adverse evidence. The principle in the case of
 
 Sobolovitz
 
 v.
 
 Lubric Oil Co.,
 
 107 Ohio St., 204, 140 N. E., 634, is not applicable.
 

 We are therefore in accord with the finding and conclusion of the Court of Appeals that there was substantial evidence to sustain each essential element of plaintiff’s claim and that there was no error in refusing to direct a verdict in favor of the defendant. The judgment is not contrary to law and is therefore affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Day and Zimmerman, JJ., concur.