SPARKS v AMERICAN LIFE & ACCIDENT INDURANCE CO. of KENTUCKY

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3123.  Decided April 5, 1940.

L. P. Henderson, Columbus, for plaintiff-appellee.

B. F. Levinson, Columbus, for defendant-appellant.

## OPINION

By GEIGER, J.

This matter is before this Court on appeal on law from a judgment of the Court of Common Pleas of Franklin County, Ohio, based upon a verdict of a jury finding in favor of the plaintiff-appellee.

The petition alleges that on November 2, 1936, an agent of the defendant insurance company solicited the plaintiff to make application for insurance on the life of her brother, Albert Conley, in pursuance of which an insurance policy was issued, naming the plaintiff-appellee, Emma Sparks, as beneficiary. The conditions of the policy are recited and it is asserted that the plaintiff complied with all the terms thereof; that upon the death of Albert Conley and the proper proof of such death, the defendant refused to pay the amount due under the policy.

An answer is filed by the company admitting practically all the allegations of the petition, but denying those not expressly admitted. The answer asserts that the policy contained certain provisions, among them, that no obligation is assumed unless the policy has been manually delivered to the insured in person and that the first weekly premium be paid while the insured is alive "and in sound health". A further provision is to the effect that unless there is a waiver by the officers of the company the policy is void if the insured "has had within one year before the date hereof any chronic disease or complaint". The answer further asserts that at the time the policy "was delivered to the said Albert Conley. deceased, the said decedent was not in sound health; that for approximately twelve or fourteen years prior to the date of the policy, the deceased had been suffering from bronchial asthma and had been treated therefor by various doctors; that by reason thereof said Conley had within one year before the date thereof a chronic disease or complaint, which was unknown to the defendant at the time said policy was issued".

For a further defense it is stated that on the 13th of June, 1938, the plaintiff executed a release in consideration of the payment to her of $21.25. being the return of all the premiums paid on said policy and by reason thereof there is nothing due the plaintiff from the defendant.

To this answer a reply is filed wherein the plaintiff denies all the allegations and new matters set up in the answer and specifically denies that she executed a release for $21.25 and that the condition of the insured's health was unknown to the defendant. The reply asserts that the condition of health was known by the defendant before said application was made and at the time of the delivery of the policy and that defendant accepted premiums in payment of the policy; that knowing all the facts in relation to the insured's health the defendant insisted upon insuring him and demanded premiums and did not attempt to contest the policy until after the death of the insured.

The verdict of the jury was in favor of the plaintiff-appellee. A motion for new trial was filed containing ten grounds. This motion was overruled, as was a motion filed by the defendant-appellant to enter judgment in its favor, non obstante veredicto.

Thereupon the court rendered a judgment in favor of the plaintiff in the sum of $272.31 from which judgment notice of an appeal was given on questions of law.

An assignment of errors is filed asserting seven grounds which may be epitomized to the effect that the court erred in overruling the motions of the defendant for a directed verdict; that the court injected issues that were not raised in the pleadings, prejudicial to the defendant; misconduct of counsel and error of the court in permitting counsel for plaintiff to comment on evidence not before the court; that the court erred in its charge to the jury and in overruling the motion for judgment non obstante; that the verdict is against the weight of the evidence.

Counsel for each side file briefs setting out reasons and authorities which each asserts support his respective claims.

An application was filed in this court for an order authorizing the official stenographer to insert in the bill of exceptions such part of the argument of counsel as was transcribed by the stenographer and inadvertently omitted from the record. This court granted leave as asked in said application. However, we do not find any such matter inserted in the bill of exceptions.

We examine the matters in the order presented by the assignment of errors.

The first assignment of error is to the effect that the Court erred in overruling the motion of the defendant for a directed verdict. It is stated that this motion was made on the authority of the case of **Mutual Life Insurance Company v Luzio, 123 Oh St 616.** This case, of course, must control us insofar as applicable.

We might cite **National Surety Company v Bohn, 125 Oh St 537.**

Counsel for the appellant quotes at large from the Luzio case. The case seems broadly to relate to the authority of the soliciting agent to waive the conditions of the policy. Counsel also quotes at large from **McReynolds v Insurance Company, 27 Abs 316,** which case relates to the effectiveness of statements made in the application and to the authority of the soliciting agent to waive a condition. The court discusses the provisions of §9387 and Barnes, J., delivering the opinion, states that "this principle would be applicable if the company were defending on any claim of false statement made in the insured's application". It may be noted in passing that a defense on account of misstatement in the application is especially disclaimed by appellant, it being asserted that the defense is based solely on the conditions of the policy. Other cases are cited and commented upon by counsel for appellant, all of which are pertinent in establishing principles which guide the trial court and if the trial court violated any of these principles to the prejudice of the defendant, then the judgment of the court below should be reversed. Whether he did or did

not violate such provisions will be commented upon when we examine the charge of the court.

The second assignment of error is that the court erred in overruling defendant's motion for judgment and under this assignment counsel call the court's attention to the fact that the evidence disclosed that the policy was not delivered to the insured, but was delivered to one Mr. Greene, it being claimed that it not having been delivered manually to the insured at the time it was issued, the policy is void and of no effect. The policy provides in reference to this matter, under Condition 2, that "no obligation is assumed by the Company prior to the date hereof, * * * nor unless this policy has been manually delivered to the insured in person * * *". The policy was issued by the Company and some one, whether soliciting agent or a superior, had the duty of delivering it to the insured and that duty fell within the scope of the authority of such agent. If that agent, in violation of his duty, ▆▆▆▆▆▆▆ delivered the policy to some other person than the insured, this does not void the policy. The matter falls clearly under the first syllabus of **Myers v Insurance Company, 108 Oh St 175**, wherein it is held that knowledge of an agent is not binding upon the principal "unless it appears that such agent had authority to deal in reference to those matters which the knowledge or notice affected or had the duty to communicate the same to his principal."

It will be readily seen that this provision as to personal delivery is a precaution against the delivery of the policy to a person not entitled to it. We detect no error under the second assignment.

The third claimed error relates to the alleged injection of issues which were not raised by the pleadings by virtue of certain inquiries made by the court during the trial and in the presence of the jury.

The court asked the beneficiary whether she signed anything when she first talked to the agent to which she answered that she had made her cross mark when they were making out the insurance. The court then inquired if she knew where the copy was and whether she got a copy of it to which she answered in the negative. The court then stated, "I want that produced", to which counsel for the company stated, still in the presence of the jury, that they did not have it and the court repeated that he wanted it produced; that the company certainly did have it and that he wanted to see it and again the court made inquiry as to the contents of the application. This colloquy certainly advised the jury that there was an application which the company had not produced and that the court wished to see it. Counsel state that their defense was not based upon this application and therefore it was not pertinent and ▆▆▆▆▆▆ that the court's inquiry was prejudicial. We do not so look upon it.

The trial court in overruling the motion for new trial states, in substance, that counsel mistakes entirely the purpose for which the defendant was ordered to produce the application, that it was material evidence to show several pertinent facts at issue. We are not prepared to say that a court is required to sit by when he discovers that what he regards as ▆▆▆▆▆▆ important evidence is not being produced or documents which relate to the case are not at hand for inspection.

We wish to say in passing, that we do not endorse the seeming position of counsel, that by asserting that his defense rests upon the provisions of the policy and that therefore the statements made in the application and the finality impressed upon such statements by virtue of the statute, are not pertinent. These statutes were passed for very definite purposes and there is statutory finality as to their correctness and immunity from attack under the conditions named in the statute. They have a very definite reference to the character of defenses that may be made and may not be so easily avoided as is

asserted by counsel in the proposition advanced. We find no prejudicial error under the third assignment.

The fourth assignment was to the effect that there was misconduct of counsel in his address to the jury. When counsel for defendant discovered that the stenographer was not taking down counsel's argument, he requested that the remainder of it be recorded. The objectionable remarks stated to be in the bill of exceptions related to an argument based upon the absence of the application, which it was asserted by counsel for plaintiff, ought to tell the story, as the application was the source of the policy, and counsel further commented upon the statutory provisions in relation to an application. Counsel objects to the action of the court in permitting opposite counsel to infer that there was something in the application that would advise the defendant that the insured was suffering from chronic asthma. It is asserted that it was the duty of the plaintiff below to bring into court the application upon proper demand, and that not having done so, it was prejudicial for counsel to infer that the defendant deliberately suppressed evidence. Counsel quote from **Insurance Company v Bennett, 45 Oh Ap 498**, wherein it is stated that where the beneficiary of the policy relies upon a waiver of a vital provision of the policy, the plaintiff has the burden of proving knowledge upon the part of the waiving officers.

We do not deem anything said in this case, in argument, is sufficient to authorize a finding that is was prejudicial error to permit counsel to make reference to the absence of the application. It is well understood that ▮▮▮▮ an argument may be made upon the failure of a party to produce evidence within their control and the jury may properly infer that such evidence, if produced, would be damaging to the party who has it in control but fails to produce it. We find no prejudicial error in this matter, especially as it does not seem to have gotten into the bill of exceptions.

The fifth assignment of error is to the effect that the court erred in its charge to the jury. The first statement that is objected to is that made by the court to the effect that evidently the local officers of the company did waive the provision that the policy was to be delivered to the insured in person and that the court further charged that if you find that the company delivered the policy to the plaintiff knowing either directly or through its agent that at the time of the issuing of the policy and the acceptance of the premium that the insured was suffering from asthma, then your verdict should be for the plaintiff. In the same paragraph the court further charged, "If, however, you find that no notice was given to the company itself of the asthmatic condition and if you further find that the asthmatic condition was such a condition as to not represent sound health, that your verdict will be for the defendant". The court further charged that the burden of proving that the decedent was not in sound health was upon the defendant and that if the company shall have proven that it had no knowledge of the asthma and the asthma was such an affliction as to constitute unsound health, which influenced the death, the verdict should be for the defendant. The court further charged that unless otherwise stated in a waiver signed by the president or secretary of the company, the policy is void if the insured has had, within one year before the date, any chronic disease, the liability shall be limited to the return of the premium. "No one but the president or the secretary of the company could waive that under the provisions of the policy, assuming that it was brought to the attention of the insured or the beneficiary who took out the policy." Counsel especially calls attention to the statement in the charge where the court said, "Whether or not that condition was brought to the notice of this plaintiff is for you to determine upon all the evidence." Counsel assert that all through the trial, the court seemed to be under the impression that the defendant based its defense upon "sound health" only,

618

where, as a matter of fact, the answer set up the defense that the policy had not been delivered to the person insured and that the insured had a chronic disase within one year before the date of the issuance of the policy.

We are of opinion that the court had a right to charge that the local officers of the company waived the provision that the policy was to be delivered to the insured in person for the reason which we have already stated.

The next matter complained of resolves itself simply into this, that the court charged that if the company delivered the policy knowing that at the time of the issuing that the insured was suffering from asthma, the verdict should be for the plaintiff, but that if no notice was given to the company itself and if the condition did not represent sound health, then the verdict would be for the defendant. We think this is entirely a sound proposition. If the company knew that the plaintiff was suffering from asthma and in spite of that knowledge issued the policy, then there is clearly a waiver. The defendant was protected by the charge that if the company had had no notice of the condition and if such condition did not represent sound health, the verdict should be for the defendant. We think this is a fair charge as to what the jury should find upon the facts developed as to that particular matter. We think it proper to charge that the burden of proving that the decedent was not in sound health was upon the defendant. It asserted that as a defense and it was up to it to prove it.

We examine more critically the second provision of the policy, the first paragraph of which is to the effect that no obligation is assumed unless the policy has been manually delivered and that the first premium was paid while the insured is alive and in sound health. We have already passed upon the question of the delivery of the policy by the agent of the company to some one other than the insured and

pointed out that the defendant waived this provision.

The case of **Fidelity Insurance Company v Lacey, 45 Oh Ap** discusses the meaning of the clause "sound health" stating that such does not mean absolute freedom from bodily infirmity or tendency to disease or temporary attack without probable bearing on the insured's life; but absence of disease that has a direct tendency to shorten life; that it means such organic ailments or diseases as incapacitate insured from attending to daily tasks and have a tendency to shorten life. The court on page 106 further discusses this matter.

We think the court in his charge clearly brought the matter to the attention of the jury, leaving it to determine whether or not the asthmatic condition was such a health condition as established the fact that the insured was not in sound health at the time the policy was delivered. The jury found, upon the evidence under the instruction of the court, that the affliction of the insured did not classify him as one not enjoying sound health. There was certainly a factual question raised which the jury passed upon and we are not inclined to disturb it or to criticize the charge of the court in reference thereto.

The second paragraph of the second condition provides, "this policy is void if insured has had within one year before the date hereof any chronic disease or complaint". The jury, as in the case of "sound health" by its verdict found that the insured did not "within one year before the date" have "any chronic disease or complaint". What is a chronic complaint? Webster defines the word "chronic" as relating to a disease, to be of long duration or characterized by slowly progressive symptoms. As to time, it is defined as continuing for a long time.

The evidence discloses the fact that the insured had had asthma for many years and had been treated by various doctors for the affliction. It will be noted that the condition prescribes only

a **chronic** disease that has existed "within one year before the date of the policy". The evidence touching the insured's condition was largely that given by the plaintiff-appellee in which she testifies she stated to the agent in answer to an inquiry as to any illness, "Yes, he has asthma" to which the agent responded, "Yes, we can get him by." At another point she testifies the agent queried, "Has he got any illness of any kind," she said, "He has asthma" and he said, "Yes, we can insure him, yes, we can get him by." She also testified that he had asthma **"once in a while—** he has been having asthma **once in a while,** I reckon ten or eleven years, I guess."

The death certificate showed that he died of myocarditis concerning which the doctor testified that when persons who had asthma, died from myocarditis, they usually do not die from asthma. They die from a heart condition that develops after they have had asthma. The asthma was apparently the cause of the heart condition which brought about the pneumonic condition. The death certificate signed by the doctor stated that he attended the deceased from May 12, 1938, to May 22, 1938; that the principal cause of his death and related causes of importance were myocarditis and that the contributory cause of importance, not related to the principal cause was hypostatic pneumonia. The doctor testified that asthma has nothing to do with hypostatic pneumonia. We do not attempt to decide the case on a close medical analysis and use only the testimony that has been given.

It is disclosed by the evidence that for the past ten or eleven years the man has been afflicted with asthma. The witness testifies that he had it "once in a while" for the last ten or eleven years. There is no evidence to the effect that any one of these "once in a whiles" had occurred within one year prior to the issuing of the policy. Having asthma "once in a while" during a period of ten or eleven years does not bring it within the definition of the word "chronic", which means continuing for a long time. We might illustrate. A man during a period of ten or eleven years may on occasions get highly inebriated and yet no one could justly say that he was a chronic drunkard. There certainly was no continuous ailment shown. The jury was instructed on all these matters sufficiently to enable it to give an intelligent verdict. We find no reason to set aside the judgment because of errors in the court's charge.

The sixth assignment of error is to the effect that the court should have sustained the motion of defendant for judgment in its favor notwithstanding the verdict. We have already said enough to answer this assignment as being without merit.

The seventh assignment is that the verdict is contrary to law and manifestly against the weight of the evidence. We have already said enough about the weight of the evidence. This is a case where a poor and ignorant woman at the solicitation of an agent took out a life insurance policy upon her brother. She made certain statements in the application for the policy which are not disclosed, although in possession of the defendant. There is testimony as to the condition of her brother at the time the policy was issued from which the jury could well find that he was, at the time of the issuing of the policy, in sound health and further that the jury could well find that within one year before the date of the policy he was not suffering from a "chronic disease or complaint" such as is contemplated in insurance law. For 85 weeks the company accepted the premium, but when death finally overtook the insured, it seeks to avoid payment because of certain alleged violations of the conditions of the policy. We think the verdict of the jury is well sustained by the evidence.

A claim is made that the beneficiary accepted the repayment of the weekly premiums in settlement of the claim. It is true such a check was tendered

to her, apparently as a bait to get her to accept the pittance instead of the face of the policy. No one can for a moment assert that the plaintiff-appellee thereby compromised the case.

We have read and re-read the record in this case and also many opinions, among which might be cited:

Surety Company v Bohn, 125 Oh St 537.

Insurance Company v Luzio, 123 Oh St 617.

Myers v Insurance Company, 108 Oh St 175.

Life Insurance Company v Bennett, 45 Oh Ap 498.

Life Insurance Company v Connell, 43 Oh Ap 415.

McReynolds v Insurance Company, 27 Abs 316.

We have also examined with reference to this case §§9387 et seq GC.

Judgment of the court below will be affirmed.

HORNBECK, PJ. & BARNES, J., concur.