For the reasons mentioned, the judgment of the Common Pleas Court will be affirmed at costs of appellants.

*Judgment affirmed.*

GUERNSEY, P. J., JACKSON and MIDDLETON, JJ., concur.

KURTH, ADMX., APPELLEE, *v.* KRUMME, APPELLANT.

(No. 3600—Decided November 22, 1943.)

*Mr. D. D. Silashki* and *Mr. Carl M. Myers,* for appellee.

*Mr. Walter Selegue* and *Mr. T. W. Kimber,* for appellant.

DOYLE, J. There is evidence in the record before us which justifies the conclusion that the appellee's decedent bought smoked pork sausage, commonly known as metwurst, from the appellant, Karl Krumme, which contained a parasite known in science as Trichinella spiralis. The sausage was manufactured by the appellant from fresh pork (which contained the parasite) purchased by him from a dealer; the process of manufacture consisted in grinding the fresh pork, mixing it with various condiments, forcing it into gut casings, and then smoking it for a length of time; it was then sold in the trade. The ingestion of the sausage by the appellee's decedent in the smoked state in which it was sold resulted in a condition known as trichinosis, from which the appellee's decedent died.

The pleadings of the appellee charged a violation of the pure food statutes, and the defense *inter alia* charged contributory negligence. A judgment was entered for damages for the petitioner following a jury verdict, and the appeal to this court is from that judgment.

Does the sale of pork sausage of the kind in ques-

tion which contains this parasite, in and of itself constitute a statutory violation? If it does the appellant is guilty of negligence as a matter of law.

The common name of the parasites is trichinae. They are extremely small and are not seen except upon microscopic examination. Even then they are likely to escape detection. The parasites cause hogs that survive the disease no particular inconvenience so far as can be judged from the external appearance of these animals, and when pork from affected hogs is cooked or frozen, as hereinafter explained, the organisms are not dangerous. But failure to cook or to freeze affected pork may, if eaten by humans, result in a condition known as trichinosis and may be fatal. Government inspection under our present system does not include the necessary miscroscopic examination to determine the presence of the organism. The temperature for safe cooking is between 132 and 136 degrees Fahrenheit, and effective freezing must be approximately 5 degrees Fahrenheit for a period of two weeks.

The Ohio statute, Section 12760, General Code, provides:

"Whoever sells, offers for sale or has in possession with intent to sell, *diseased*, corrupted, *adulterated* or unwholesome provisions without making the condition thereof known to the buyer, shall be fined * * *." (Italics ours.)

Section 5774, General Code, is:

"No person, within this state, shall manufacture for sale, offer for sale, sell or deliver, or have in his possession with intent to sell or deliver, a drug or article of food which is adulterated within the meaning of this chapter, or offer for sale, sell or deliver, or have in his possession with intent to sell or deliver, a drug or article of food which is misbranded within the meaning of this chapter."

Section 5778, General Code, defines adulterated food as follows:

"Food, drink, confectionery or condiments are adulterated within the meaning of this chapter * * * (5) if it consists wholly, or in part, of a diseased, decomposed, putrid, infected, tainted or rotten animal or vegetable substance or article, whether manufactured or not or in the case of milk, if it is the product of a diseased animal * * *."

The Supreme Court of this state affirmed, without opinion, a judgment of the Common Pleas Court of Portage county bottomed upon the sale of pork containing trichinae. *Allen* v. *Marvin, Admr.*, 46 W. L. B., 208; affirmed, *Allen* v. *Marvin, Admr.*, 64 Ohio St., 608, 61 N. E., 1139, and approved and followed in the second paragraph of the syllabus of *Portage Markets Co.* v. *George,* 111 Ohio St., 775, 146 N. E., 283.

The United States Circuit Court of Appeals, Sixth Circuit, following the principles in the above cases, reversed a judgment of the District Court of the United States for the Northern District of Ohio, and in its decision determined that "pork that is infected with trichinella is diseased within the meaning of the Ohio Pure Foods Law. * * * Its sale, even when the seller has no knowledge that it is diseased or infected, violates the statute and the seller is negligent in law." *Troietto* v. *G. H. Hammond Co.,* 110 F. (2d), 135.

The members of this court are of the opinion that the above and hereinafter cited cases of the Supreme Court of Ohio have foreclosed the question in this state as to the construction to be given the statutes.

We therefore conclude that the facts in the present controversy bring the case within the principle of the decisions cited, and that smoked pork sausage, commonly known as metwurst, infected with trichinella is diseased within the language of the statute, and its

sale by the appellant in this case, even though he had no knowledge of the presence of the parasite, or could not with reasonable diligence have ascertained it, constituted a violation of the statute. Under the statute he is an insurer of the wholesomeness of his product.

The original and amended pure food laws were enacted to protect the public generally against the harmful consequences attendant upon the sale of diseased food. To accomplish that end, amendments of the original act require the seller at his peril to know that the food which he offers for sale is not diseased. And in civil actions growing out of a violation of pure food statutes, the law is well settled that a proved violation constitutes negligence *per se*. *Allen* v. *Marvin, Admr., supra; State* v. *Kelly,* 54 Ohio St., 166, 54 N. E., 163; *Schell* v. *DuBois, Admr.,* 94 Ohio St., 93, 113 N. E., 664; *Portage Markets Co.* v. *George, supra; Great A. & P. Tea Co.* v. *Hughes,* 131 Ohio St., 501, 3 N. E. (2d), 415; *Yochem* v. *Gloria, Inc.,* 134 Ohio St., 427, 17 N. E. (2d), 731; and *Rubbo* v. *Hughes Provision Co.,* 138 Ohio St., 178, 34 N. E. (2d), 202.

It is also established that, in a civil action against a seller of diseased meat, if the evidence justifies, contributory negligence becomes an issue.

"2. The violation of the pure food laws of this state by the sale of unwholesome meat is negligence *per se*, and may be the basis of recovery for damages by the user of said unwholesome meat, who suffers injury proximately resulting therefrom, *provided the user is not himself guilty of negligence in the care, preparation, cooking, or in any other manner which contributes directly to his injury.*" (Italics ours.) *Portage Markets Co.* v. *George, supra.*

We are not confronted in this case with a situation in which the injured person ate raw pork chops or raw

pork steak, which condition was perfectly apparent to the eye. Our case shows that the food consumed was partially smoked and .encased in gut; that some people ate it without cooking or further preparation, as is so frequently the case with bologna, summer sausage, etc. Under these circumstances, we are of the opinion that a jury question was presented as to whether or not plaintiff's decedent was guilty of contributory negligence; and that the eating of this particular product in a smoked, raw state was not such a circumstance as to permit it to be said that reasonable persons could conclude only that such eating constituted a lack of ordinary care and therefore negligence. *Hamden Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St., 469, 189 N. E., 246.

In conclusion, we find that the trial court properly submitted the issues of negligence and contributory negligence to the jury, and the verdict returned we find not to be manifestly against the weight of the evidence. Likewise, we have examined other claimed errors, and we find none prejudicial to the rights of the appellant.

The judgment is affirmed.

*Judgment affirmed.*

STEVENS, P. J., concurs.

WASHBURN, J., concurring in judgment: I fully concur in the foregoing judgment, but I desire to emphasize the fact that the article of food involved in this action was a prepared, or processed, article, which the seller testified he knew was eaten by some people, including himself, in the condition in which it was sold, and without cooking. The case does not involve simply the sale of raw pork, such as a pork chop, which, as a matter of common knowledge, should be and usually is cooked before eating.