**Philomena SULLIVAN and John Sullivan, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. 5:90CV1465.**

United States District Court,
N.D. Ohio, E.D.

July 24, 1991.
On Motion for New Trial Aug. 15, 1991.

Timothy A. Shimko, Sr., Janet Ileen Stich, Shimko, King & Stich, Cleveland, Ohio, for plaintiffs Philomena and John Sullivan.

Norman S. Carr, Amie L. Bruggeman, Roetzel & Andress, Akron, Ohio, for defendant General Motors Corp.

Philip W. Murray, Koch, Regal & Murray, Akron, Ohio, for movant Richard C. Zahn, M.D.

### ORDER

ANN ALDRICH, District Judge.

In this product liability case, defendant General Motors seeks a jury charge regarding the "spoliation" of evidence which General Motors contends is critical to its defense. Because the Court concludes that no such jury charge is warranted under either the controlling case law, or the facts

of this case, the Court will not charge the jury on spoliation of evidence.

## I.

Philomena Sullivan was injured on February 2, 1985, when the 1983 Pontiac *Parisienne* automobile being driven by her husband, John Sullivan, plowed into the back of a delivery truck on Interstate Route 71 near Columbus, Ohio. The expert witnesses agree that the collision, on an ice-covered road, occurred at no more than 10–to–15 miles per hour. Mr. Sullivan was not hurt, but Mrs. Sullivan received serious cervical injuries—as well as several other wounds, including a bruised heart and a cracked rib.

According to the Sullivans, Mrs. Sullivan's seat thrust forward on impact, pinning her between her seat and her seatbelt (which had properly locked into place), thereby causing her injuries. The Sullivans contend that the seat tracking mechanism was defectively manufactured by General Motors. Mrs. Sullivan's seat was designed to lock into place on both sides, but the Sullivans contend that one of the sides failed to lock because of improper alignment. The Sullivans posit that this prevented the seat from holding in place during the impact.

The Sullivans' car was repaired in Columbus shortly after the accident. Prior to the repair, Mr. Sullivan took six photographs of the outside of the car. There were no photographs made of the seat tracking mechanism, and the evidence does not indicate that the seat tracking mechanism was altered at the time of the repairs.

The Sullivans initially sued General Motors in 1987, but that suit was voluntarily dismissed, without prejudice. During discovery in that case, Mr. Sullivan produced the six photographs of the car. However, prior counsel (for both General Motors and the Sullivans) lost all sets of the photographs, and all that survives are xeroxed copies.

The seat tracking mechanism passed through the hands of several experts, both during this and the prior case. Part of the mechanism was damaged, and there has been circumstantial evidence that the damage may have occurred while the seat was in the custody of one of the Sullivans' experts, Jo Ellis Davidson.

Trial in this case began on July 15, 1991. All of the evidence has been received, and the case will be submitted to the jury on July 23. The parties have submitted their proposed jury instructions, and the Court will approve its own final instructions after entertaining objections from the parties.

General Motors has submitted a particularly creative instruction captioned "Spoliation of Evidence." The proposed instruction would tell the jury that the absence of any photographic or other evidence regarding the seat tracking mechanism, prior to repair, could support an inference that such evidence would have been favorable to General Motors.[1] Subsequently, General

---

1. The proposed charge reads:

As I have explained to you, it is undisputed that Mrs. Sullivan was injured as a result of an impact caused when the 1982 General Motors' vehicle her husband was driving slid into the rear of another vehicle. This accident occurred in 1985. Her claim in this case is not that a General Motors product caused that accident; but, rather, that her injuries were enhanced or increased as a result of a defect in the passenger seat locking mechanism and its track assembly.

I instruct you that no photographs were taken of the passenger seat locking mechanism and its tracking assembly before the vehicle was repaired, nor were these parts examined by any expert before the car was repaired. Plaintiffs caused the parts to be examined only after the vehicle was repaired and back in service, including the passenger seat. Thus, General Motors was deprived of any photographic or other evidence related to the condition of the allegedly defective parts at the time of the accident and those parts have been damaged subsequent to the accident.

I instruct you that when evidence of the condition of specific parts is central to a claim and plaintiffs either intentionally or carelessly fail to preserve the evidence or the evidence is damaged while in their control, the law provides that you may infer that the evidence, if properly preserved, would not have supported plaintiff's claim of defect. In other words, to balance the defendant's inability to examine the true condition of the evidence which plaintiffs were in the best position to preserve it in order to prove their claim, you may draw the inference that such original evidence, post-accident, was not help-

Motors submitted an alternate charge that the Sullivans' failure to preserve this evidence creates an absolute presumption against them.[2] It is the propriety of this proposed instruction which is now before the Court.

## II.

It is the duty of this Court to provide clear, concise jury instructions which accurately state the law of Ohio. The instructions, taken as a whole, must "provide the jury with sufficient guidance concerning the issues to be tried." *Bagherzadeh v. Roeser*, 825 F.2d 1000, 1003 (6th Cir.1987) (quoting *Teal v. E.I. DuPont de Nemours and Company*, 728 F.2d 799, 802 (6th Cir. 1984)).

## III.

At common law, it was proper to presume that evidence which had been destroyed, or "spoliated", could be construed against the party responsible for the destruction of that evidence.[3] Typically, this principle is applied in cases involving the destruction of documents.

[W]here the destruction of documents has been *intentional and for the purpose of depriving the opposing party of evidence*, the utmost inference logically possible should favor the party aggrieved, and ... the contents of such documents destroyed should be presumed to be what the party aggrieved so alleges them.

*Banks v. Canton Hardware Co.*, 156 Ohio St. 453, 461, 103 N.E.2d 568, 573 (1952) (emphasis added, citations omitted); *see also Nation–Wide Check Corp., Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214 (1st Cir.1982). Significantly, the principle stated in *Banks* was based not only upon the common law, but also upon an Ohio statute providing for such a presumption. 156 Ohio St. at 460–62, 103 N.E.2d at 572–73.[4] Similarly, in criminal cases, Ohio courts favor the analogous reasoning that intentional destruction of evidence may properly raise an inference of consciousness of guilt. *State v. Strub*, 48 Ohio App.2d 57, 64, 355 N.E.2d 819, 825 (1975); *State v. Bayless*, 14 Ohio App.2d 11, 13, 235 N.E.2d 737, 738–39 (1968); *accord U.S. v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987).

From time to time, Ohio courts have been urged to apply the principle *omnia presu-*

---

ful to plaintiff in relation to her claim of defect.

You may consider this inference in the totality of evidence before you in reaching your conclusion as to whether or not a defect existed in the passenger seat locking mechanism and its tracking system. You should disregard it only if you find that plaintiff has produced credible evidence of the true condition of these parts in 1985, at the time of the accident.

2. The alternate proffered instruction repeats the first two paragraphs of the original proposal, and then continues:

I instruct you that Plaintiffs' failure to preserve the critical evidence in this case raises a presumption that the evidence, if properly preserved, would not have supported their claim of defect. You must, therefore, consider this presumption against the Plaintiffs in the mix of evidence before you regarding the alleged defect.

3. At least two federal courts have traced the origins of this principle to *Armory v. Delamirie*, 1 Strange 505, 93 Eng.Rep. 664 (K.B.1722). In that case, a chimney sweep found a jeweled ring and took it to a jeweler for appraisal. When the jeweler returned the ring, the jewel was missing, and the chimney sweep brought an action to recover the jewel. Since the jeweler had retained the jewel, the trial judge instructed the jury to "presume the strongest against [the jeweler], and make the value of the *best* jewels the measure of ... damages." *See Welsh v. U.S.*, 844 F.2d 1239, 1246 (6th Cir.1988); *Nation–Wide Check Corporation, Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir.1982).

4. The *Banks* court also held that the aggrieved party was required to state, with some specificity, what the precise contents of the documents would have been. 156 Ohio St. at 462, 103 N.E.2d at 573–74. Banks complained that the Canton Hardware Company owed him commissions, and the hardware company had destroyed the relevant documents; the Ohio Supreme Court held that Banks was required to proffer the basis for his claim that those documents would have showed that the hardware company owed him $2,500 in commissions. *Id.*, 103 N.E.2d at 574.

*muntur contra spoliatorem*[5] in personal injury cases. For example, in *The Miami and Montgomery Turnpike Co. v. Baily*, 37 Ohio St. 104 (1881), Baily received permanent injuries to his hip, back, and right side when his wagon fell from a bridge negligently maintained by the turnpike company. During the turnpike company's case (and thus after the close of Baily's case-in-chief), defense counsel requested that its medical expert be permitted to examine Baily's injuries—either in open court or in an adjoining room. Baily refused, and the turnpike company requested the following jury instruction at the close of the evidence:

> If the jury find from the evidence that the plaintiff claims to bear the plain perceptible physical mark or deformity of the injury, of which he complains, about the region of the small of his back, and willfully and without reasonable explanation justifying or excusing it, the plaintiff refused (being present in the court) at any time after the close of the testimony on his behalf, to allow an inspection or examination of such mark or deformity, by any competent physician and surgeon, at the request of the defendant, either privately or before the jury, *such refusal affords a presumption against the claim of the plaintiff as to the character and extent of such mark or deformity, and the jury have the right to consider such refusal in favor of the defendant.*

*Id.* at 105–06 (emphasis added). The trial court declined to give this charge. Rather, the court used the same introductory language, but then substituted the underscored section of the requested charge with the following: "The jury have the right to consider such refusal in connection with the proof as affecting the question of the character and extent of such mark or deformity." *Id.* at 106.

On appeal, the Ohio Supreme Court first ruled that it was within the trial court's discretion to have declined to issue an order requiring Baily to submit to a physical examination, given the untimely nature of the request. *Id.* at 107–08. The supreme court also upheld the jury charge. As cast by the turnpike company, the jury instruction would have created a strong presumption against Baily's claim regarding the extent of his injuries. The charge selected by the trial court, however, properly stated the law: the jury was informed that a refusal to submit to a physical exam could be held against Baily, but, by excising the language establishing a presumption, the jury could also consider the timeliness of the request. *Id.* at 108.

An Ohio Court of Appeals also discussed this issue in *Hubbard v. Cleveland, Columbus & Cincinnati Hwy.*, 81 Ohio App. 445, 451, 76 N.E.2d 721, 724 (1947). *Hubbard* was a wrongful death action involving the collision of two tractor trailers, and the jury rejected plaintiff's theory that the defendant's truck had been driving in the wrong lane. *Id.* at 446–47, 76 N.E.2d at 722. The defense rested without presenting any evidence, and, on appeal, the plaintiff argued that it was entitled to a jury instruction that it was permissible to infer that any evidence which the defendant might have produced would have been unfavorable to the defense. In support of its position, the plaintiff quoted the following language from a treatise:

> It is a well-established rule that where relevant evidence which would properly be part of a case is within the control of a party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would be unfavorable to him.

*Id.* at 451, 76 N.E.2d at 724 (quoting 20 *American Jurisprudence* at 188). The court of appeals rejected the argument since a defendant has an absolute right to rest without offering any evidence, and may simply rely on a failure of proof by

---

**5.** "All things are presumed against a despoiler or wrongdoer." *Black's Law Dictionary* (5th Ed.1979) at 980.

the plaintiff.[6] *Id.*, 76 N.E.2d at 724. In *dicta*, however, the court did not disapprove of the general principle of law cited by the plaintiff; the court simply stated that the rule applied only "to a party in presenting evidence in support of his own case." *Id.*, 76 N.E.2d at 724.

## IV.

### A.

In support of its proposed jury charge, General Motors relies on a series of Ohio appellate decisions, none of which directly discuss the propriety of a jury instruction on spoliation. Moreover, most of these cases involve evidence which was unavailable to support the plaintiff's case because of some implied malfeasance or neglect by the defendant. These cases also pre-date the Ohio Supreme Court's decision in *Banks*, which indicated, in a documents case, that the destruction of evidence must be "intentional and for the purpose of depriving the opposing party of evidence" in order to create an adverse inference based on spoliation. 156 Ohio St. at 461, 103 N.E.2d at 573.

First, General Motors cites *Armour & Co. v. Yoter*, 40 Ohio App. 225, 178 N.E. 596 (1931), where two trucking companies of the same name (Armour & Company of Kentucky and Armour & Company of Maine) sought to avoid a judgment on the disingenuous theory that Yoter failed to prove *which* Armour & Company was liable for his injuries. At trial, Yoter called Armour's local manager as a witness, and subpoenaed him to bring documents regarding his company. The manager claimed that he did not have any such records, and he knew only that he worked for "Armour & Co."—but did not know the state of incorporation. *Id.* at 234–35, 178 N.E. at 600. The court of appeals rejected the argument that there was insufficient evidence to pin Yoter's claim on either company.

It seems to us that a great deal may be inferred from the failure of plaintiffs in

error [defendants below] to present evidence to show which Armour & Company owned the truck, and which Armour & Company employed the driver. The failure to produce evidence peculiarly within the knowledge of plaintiffs in error is a rather eloquent fact in itself, and, in our opinion, the jury was not straining the evidence if it found that this separate existence of two corporations, one organized under the laws of Maine and the other organized under the laws of Kentucky, was technical only in its character, and that, as a matter of fact, whatever business Armour & Company was doing in Ohio ... was operated as a joint enterprise.

In a case such as presented by the record it properly becomes the burden of the defendants to furnish information as to the ownership of the truck and the employment of the driver. Were the rule otherwise, it would result in defeating righteous claims resulting from the wrongful acts of employees of either company.

*Id.* at 236–37, 178 N.E. at 600–01.

Similarly, in *The Great Atlantic & Pacific Tea Co. v. Hughes*, 53 Ohio App. 255, 4 N.E.2d 700 (1935), *aff'd*, 131 Ohio St. 501, 3 N.E.2d 415 (1936), A & P contended that Hughes failed to provide sufficient evidence of her claim of food poisoning because of the absence of any medical specimens or specimens of the adulterated food itself. Hughes became ill after eating sausage purchased from the A & P; none of her family ate any of the sausage. The court of appeals found the evidence sufficient since other evidence—including Hughes' doctor's testimony and the fact that none of her family members became ill—sufficient to support the verdict in favor of Hughes. *Id.* at 263–65, 4 N.E.2d at 704. The court also noted that the jury might properly have inferred, in connection with the other evidence, that the sausage was adulterated because an A & P attorney recovered the remaining portion of the

---

6. In addition, the plaintiff did not request such a charge in the trial court, raising the issue for the first time on appeal. *Id.* 81 Ohio App. at 452, 76 N.E.2d at 724.

meat from Hughes, supposedly for lab testing; however, the testing was never accomplished, and the specimen was lost.[7] *Id.* at 264–65, 4 N.E.2d at 704. In affirming the verdict, the court of appeals quoted the same language cited from *Hubbard, supra.* *Hughes,* 53 Ohio App. at 265, 4 N.E.2d at 704. The court also noted that the A & P attorney was in a nearby courtroom during the trial, and that A & P therefore had ample opportunity to explain the fate of the specimen. *Id.,* 4 N.E.2d at 704.

Another case, also supporting these principles but not involving a jury, is *Cleveland Concession Co. v. City of Cleveland,* 84 Ohio App. 1, 7–9, 83 N.E.2d 818 (1948). In that case, the City of Cleveland sought to revoke a vendor's franchise at the stadium, making several arguments that the vendor violated its contract with the city. The trial court granted injunctive relief in favor of the vendor, prohibiting the city from cancelling the contract, and this decision was affirmed on appeal. The city's case had included "secondary evidence" that its agents purchased samples of the vendor's goods which were under-weight. The samples, although capable of preservation, were no longer available, and the city provided no explanation for their absence. *Id.* at 7–8, 83 N.E.2d at 822–23. Again, the court found a presumption running against the party which failed to produce evidence, without explanation, which normally would have been expected to support that party's position. *Id.* at 8–9, 83 N.E.2d at 823. *Cf. McLaughlin v. Massachusetts Indemnity Ins. Co.,* 85 Ohio App. 511, 84 N.E.2d 114 (1948) (rule that failure to produce documents within party's control creates a negative inference does not apply when party claims valid privilege).

Finally, in a case discussing proper closing argument, a court of appeals affirmed a judgment on an insurance contract where the claimant's attorney pointed out to the jury that the insurance company failed to produce the original insurance application. *Sparks v. American Life & Accident Ins. Co.,* 31 Ohio L.Abs. 613, 617 (Ohio App. 1940). The insurance company sought to avoid the policy on the theory that the claimant's decedent had misrepresented the state of his physical health. The court found the argument to have been proper, stating, "It is well understood that an argument may be made upon the failure of a party to produce evidence within their control and the jury may properly infer that such evidence, if produced, would have been damaging to the party who has it in its control but fails to produce it." *Id.* at 617.

**B.**

General Motors also argues that a recent Sixth Circuit opinion, *Welsh v. U.S.,* 844 F.2d 1239 (6th Cir.1988), is in support of its position. *Welsh* was a medical malpractice action under the Federal Tort Claims Act which was tried to the bench under the substantive law of Kentucky. Judge (now Chief Judge) Merritt announced the judgment of the court of appeals, and focused his opinion on the theory that the absence of certain medical evidence which, after surgery, should have been—and under normal procedures would have been—preserved and tested, created an inference that the evidence would have supported the plaintiff's claim of malpractice. *Id.* at 1239–49. Judge Nelson, in a concurring opinion, concluded that the evidence supported the verdict in favor of the plaintiff, but he did so without resort to the legal presumptions employed by Judge Merritt. *Id.* at 1249–52. Finally, Judge Wellford dissented; he disagreed with Judge Merritt's use of presumptions based on the missing medical evidence, and otherwise concluded that the evidence did not support the verdict. *Id.* at 1252–54; *compare Battocchi v. Washington Hospital Center,* 581 A.2d 759, 764–68 (D.C.App.1990) (declining to follow *Welsh,* and ruling that "spolia-

---

7. On further appeal, the Ohio Supreme Court ruled that Hughes need not produce medical evidence, or a specimen of the food itself, to support her claim, so long as her claim was established by other evidence. However, the supreme court did not consider A & P's role in making the food sample unavailable. *Great Atlantic & Pacific Tea Co. v. Hughes,* 131 Ohio St. 501, 3 N.E.2d 415 (1936).

tion" charge is appropriate only when loss of, or failure to preserve, evidence is in bad faith). In view of the badly split panel, and the fact that the court of appeals was applying Kentucky law, this Court finds *Welsh* to be only of limited value in illuminating the Ohio law of spoliation of evidence.

## V.

Based on its review of the case law, and the facts of this case, the Court will not give a "spoliation" charge. First, unlike much of the authority cited, there is no evidence that the Sullivans' failure to photograph the seat tracking mechanism, before their car was repaired, was either negligent or in bad faith. This Court believes that Ohio courts normally would require a strong showing of malfeasance—or at least gross neglect—before approving such a charge. *See Banks*, 156 N.E.2d at 461, 103 N.E.2d at 573.

Second, this is not a case where any evidence which once existed was later destroyed by one of the parties. The law of spoliation does not impose upon a party the burden to *create* evidence which, at some future time, an opposing party might find useful. In addition, the Court notes that there is no evidence that the seat tracking

mechanism was altered during the repair process. The first alteration to that mechanism occurred no earlier than when the seat was in the possession of Davidson, one of the plaintiff's experts. Moreover, Davidson took photographs of the seat tracking mechanism prior to the damage. These photographs have been admitted into evidence, and they were available to General Motors during discovery.

Finally, the charge requested by General Motors would unfairly prejudice the Sullivans. During trial, General Motors has made much of the fact that there were no photographs of the car itself (as well as the seat tracking mechanism), prior to repair, which General Motors could use to support its theory of the case. Yet, General Motors itself—through prior counsel—was as much responsible as the Sullivans for the loss of those photographs during discovery in the prior litigation.

Of course, as is clear from the case law, General Motors is free to argue that the absence of these photographs, and the subsequent repair of the car, has rendered the Sullivans unable to meet their burden of proof. *See Sparks*, 31 Ohio L.Abs. at 617. The Court believes that its general instructions on the nature of the evidence which the jury may consider [8], and the burdens of

---

**8.** CONSIDERATION OF THE EVIDENCE

As stated earlier, it is your duty to weigh the evidence and determine the facts, and in so doing you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses; all exhibits admitted in the record; and all facts which have been admitted or stipulated. Any evidence to which the Court sustained an objection, and any evidence ordered stricken by the Court, must be entirely disregarded.

Remember that any statements, objections or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

EVIDENCE—DIRECT AND CIRCUMSTANTIAL; INFERENCES

There are two types of evidence from which you may find the truth as to the facts of a case—direct and circumstantial evidence. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness; circumstantial evidence is a chain of facts and circumstances which tend to prove the existence of an element necessary to establish a claim or a defense. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

proof[9], are sufficient to prevent a verdict which is not supported by the weight of the evidence.

## VI.

Accordingly, General Motors' request that the jury be charged regarding spoliation of evidence is DENIED.

IT IS SO ORDERED.

### ON MOTION FOR NEW TRIAL

A jury entered a verdict in favor of the plaintiffs, Philomena Sullivan and John Sullivan, and against defendant General Motors Corporation, in the amount of $569,-000: $413,000 in compensatory damages for Mrs. Sullivan, $56,000 for Mrs. Sullivan's medical expenses, and $100,000 for Mr. Sullivan's loss or consortium claim. By prior agreement of the parties, the compensatory damages were reduced by $360,-000 to reflect a prior settlement agreement from Mr. Sullivan's automobile insurance carrier.

General Motors has moved for a new trial, challenging several of this Court's rulings during the course of the trial. Because the Court believes its rulings were proper, the Court denies the motion.

One of General Motor's arguments was based on the Court's refusal to charge the jury on "despoliation of evidence." General Motors points out that, in its memorandum and order, the Court noted, "[T]here is no evidence that the seat tracking mechanism was altered during the repair process." However, the repair bills submitted into evidence include the following item:

[Repl.] Lt. & Rt. front seat      [$]75.00
  backs & tracks      —

This item suggests that the repair shop may have replaced part of the seats and returned them to the seat tracking mechanism.

The Court cannot conclude, unequivocally, that this ambiguous notation demonstrates that the seat tracking mechanism was "altered" during the repair process. Significantly, General Motors did not seek to develop any testimony to explain the meaning of this item on the repair bill, nor did General Motors discuss this question with the jury during its closing argument.

Finally, even if General Motors could find clear evidence in the record to show that the seat tracking mechanism was affected during the repair process, such evidence would not entitle it to a new trial. The Court granted General Motors' request for a jury interrogatory to identify the precise design defect upon a finding of liability. On the verdict form, the jury stated that the defect was "DENT IN FLOOR PAN LEADING TO MISALIGNMENT OF SEAT TRACK." Since this statement reflected the Sullivans' theory that the seat tracking mechanism was misaligned, the precise condition of the two seat tracking "pawls", which failed to hold Mrs. Sullivan's seat in place, evidently was not relevant to the jury's determination of liability.

Accordingly, and also for the reasons previously set forth in the record of this case, General Motors' motion for a new trial is denied.

IT IS SO ORDERED.

---

9.      BURDEN OF PROOF

The Sullivans bear a burden in this case to prove their claim by a "preponderance of the evidence." A preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. In other words, to establish a claim by a "preponderance of the evidence" merely means to prove that the claim is more likely so than not so.

In determining whether any fact in issue has been proved by a preponderance of the evidence, the jury may consider the testimony of all the witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have produced them. Proof may not, however, be based upon mere speculation or conjecture. If the proof offered fails to establish, by a preponderance of the evidence, a claim on which a party bears the burden of proof, the jury must find for the other side.