## CHARLESTON

HEDRICK *v.* COUNTY COURT OF SUMMERS COUNTY.

Submitted September 12, 1912.   Decided February 4, 1913.

1.   COUNTIES—*Bonds—Construction of Bridges—"Roads."*
        Acts 1911, ch. 38, sec. 25a, authorizing the bonding of a
     magisterial district for the construction of roads therein, does
     not contemplate bridges over large streams as a part of
     public roads.   (p. 733).

2.   SAME.
        An issue of magisterial district bonds under Acts 1911, ch. 38,
     sec. 25a, not solely for the construction of roads in the district,
     but largely for the construction or purchase of bridges therein
     exceeding five feet in length, is illegal and void.   (p. 733).

. Appeal from Circuit Court, Summers County.

   Bill in equity by George W. Hedrick against the County
Court of Summers County and others.   From a decree denying
an injunction and dismissing the bill, plaintiff appeals.

*Reversed, with Directions.*

*W. T. Ball,* for appellant.

*Thos. N. Read,* for appellees.

ROBINSON, JUDGE:

   This suit involves the validity of bonds issued for the district
of Talcott, in the county of Summers.   The bill is one on be-
half of taxpayers charging illegality in the bond issue, and pray-
ing that sale of the bonds be perpetually enjoined.   The injunc-
tion prayed for was denied and the bill dismissed.   Plaintiffs
have appealed.

   The county court based its authority to submit the bond prop-
osition to the voters of the magisterial district, and to issue
the bonds, which were ratified by a three-fifths majority, on sec.
25a, ch. 38, Acts of 1911.   But plaintiffs submit that the stat-
ute referred to only authorizes bonds for constructing roads
through the district, while the bond issue in question was not
simply for the construction of roads but also for the purchase
of two privately owned bridges across the Greenbrier river, or the
construction of bridges instead of those privately owned.

That the larger part of the bond issue was intended distinctly for bridge purposes is conceded. The bond proposition submitted by the county court to the voters of the district, on the petition of fifty voting freeholders, so stated, and the order issuing the bonds after the proposition had been ratified at the election conforms exactly thereto. The purposes of the issuance of the bonds for $55,000 was expressed in the proceedings leading to their issuance in these words:

"$30,000 of which, or so much thereof, as may be necessary, to be appropriated for the construction of bridges, or the purchase of bridges already built, at Talcott and Pence Springs in said District, to be opened as part of the public road system of the said District, and $25,000 of which to be appropriated for the construction of roads through said District."

The point to be decided is a short one. Does the word "roads" in the statute include bridges within its meaning? It will be well to set forth this statute: "When the county court of any county deems it desirable for any district thereof to appropriate money to construct roads through said district, upon the petition of fifty legal voters who are freeholders of said district, they shall submit the proposition for issuance of bonds to the legal voters of said magisterial district desiring to be bonded, and in which the proceeds of said bonds are to be expended, and may by an order specifying the work to which the money is proposed to be appropriated, and the amount of the proposed appropriation, cause a vote to be taken upon the question at the several places of voting in the district," etc. Acts 1911, ch. 38, sec. 25a.

It is submitted that bridges are parts of roads and that the appropriation of bond money for bridges is within the contemplation of this statute. It is true that bridges are sometimes considered as parts of streets or roads. Though that may be true ordinarily, it can not control decision of the point in this instance. For, the very chapter of our statutory law into which the Legislature placed the act above quoted contains a definition of a road, which is made applicable throughout that chapter. The Legislature itself has defined what a road is, within the meaning of that chapter. It is not within the power of a court to say that a road shall mean other than what the law-makers in

direct terms said the same should mean. The word which we are asked to interpret is specifically interpreted in a former section of the chapter to which the section containing the word belongs. Sec. 25a, ch. 38, Acts 1911, is an amendment or additional section to ch. 52, Acts 1909. When the Legislature inserted sec. 25a, ch. 38, Acts 1911, into ch. 52, Acts 1909, that law making body knew how the latter chapter defined a public road. Thus the Legislature expressed intention that the word "roads" in sec. 25a be understood as ch. 52 defined it.. That the two acts must be read together can not be gainsaid. They are parts of the same general road law. The act giving the definition virtually says the definition shall be applicable wherever the word defined is used in the general road law of which it is a part. That definition is as follows: "A public road, within the meaning of this chapter, includes any road leading from any other public road over one or more person's land to another person's land and which has been established for the convenience of one or more residents or land owners, or persons, or corporation owning or occupying or desiring to use or occupy lands which cannot be reached by any other public road and to which road the public has the right of or is not denied the use. A public road shall be deemed to include necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls, and all bridges having a span of five feet or less." Acts 1909, ch. 52, sec. 1.

Does not this defining of a road exclude bridges longer than five feet from consideration as a part of the road? What else can the words mean? Plainly they say that such bridges as those that span the Greenbrier River are not to be considered in the meaning of the word "road" when used in this same category of road law in which we find the definition. Then, when we look to sec. 25a for authority to issue bonds for roads in a magisterial district, in the light of this statutory specification as to what shall be considered a public road, can we at all be justified in saying that bridges are contemplated in the meaning of the word "roads" as there used? It is clear that they are not.

Moreover, this exclusion of bridges from contemplation in the use of the word "roads" is entirely consistent with the separate and distinct use of the two words throughout our statutory law as it now is and has long been in relation to the establishment,

construction, and maintenance of roads, bridges, landings, etc. Bridges have long been dealt with in our law, as well as our county administration, as a separate and distinct subject from that of roads. Bridges spanning large rivers have been considered as county, not district enterprises. One section of our law expressly so deals with them. Acts 1909, ch. 52, sec. 23. The reasons for making large bridges county charges are plainly apparent. It is unnecessary to recite them here. Certain it is, that in our fiscal and administrative county affairs there has long been an accepted and practiced construction which has not included large bridges within the meaning of roads, and that same practical construction has been countenanced and adopted by the Legislature itself in expressly defining public roads.

The act authorizing the bonding of a magisterial district for the construction of roads therein, does not authorize such bonding for the construction or purchase of bridges like those which cross the Greenbrier River. Plaintiffs were entitled, upon the bill, answer, and other papers in the cause to the perpetual injunction which they sought. The decree will be reversed, and it will be ordered that the plaintiffs have full relief in the premises.

*Reversed with Directions.*