EDWARD ROBINSON, APPELLANT, v. THE BOARD OF
CHOSEN FREEHOLDERS OF THE COUNTY OF PASSAIC
ET AL., RESPONDENTS.

Submitted July 9, 1917—Decided November 17, 1917.

1. The duty imposed upon counties to erect highway bridges in this
   state is, and always has been, the subject of statutory regulation;
   no such duty having been imposed upon the counties by any rule
   of the common law.
2. The highway bridge over the Morris canal, involved in this suit,
   was built between 1853 and 1856 and repaired in 1871, and
   there was evidence from which the jury could have inferred that
   it was built by the freeholders of Passaic, who were then, by
   statute, charged with the construction of bridges.
3. The term "bridge" conveys the idea of a passageway by which
   travelers are enabled to pass safely over streams and other ob-
   structions, and the law requires that those who erect the structure
   itself shall make it accessible at its ends by filling up so far as is
   necessary to make a convenient and safe passageway for the
   public.
4. The freeholders of a county cannot escape responsibility for
   neglecting to erect or repair railings and guards along embank-
   ments, bridge approaches, &c., because not notified by the town-
   ship committee that the road is unsafe for travelers by reason
   of such unprotected embankments or unguarded bridge approaches,
   under *Comp. Stat.*, p. 4616, § 560, because the freeholders' duty
   is unqualified and does not depend upon a proper performance
   of duty by the township authorities.

On appeal from the Supreme Court.

For the appellant, *Treacy & Milton*.

For the respondents, *Frederick W. Van Blarcom*.

The opinion of the court was delivered by

WALKER, CHANCELLOR. This case comes before the court
on an appeal from a nonsuit granted to the defendant at the
close of plaintiff's case. The action was brought against the
board of chosen freeholders of the county of Passaic to re-
cover damages for personal injuries sustained by plaintiff in

falling off the approach to a bridge alleged to have been erected and maintained by the board of chosen freeholders of Passaic county, under the provisions of an act respecting bridges, approved March 15th, 1860. *Pamph. L., p.* 285; *Comp. Stat., p.* 304, § 9.

Plaintiff was driving a truck owned by his employer along a public highway in Passaic county, which is intersected by the Morris canal. At the point of intersection the road is carried over the canal by a bridge. The floor of the bridge is sixteen feet, three inches above the level of the road. The road on the northerly side where the accident occurred has an acclivity for a distance of two hundred and fifty-eight feet to the bridge floor. The grade varies from five to eleven per cent. At a point fifty feet distant from the northern end of the bridge there is a break in grade changing from six to eleven per cent., or a change of five per cent. in the ascent.

Plaintiff attempted to drive his truck over the bridge. The horses stopped just as they were about to step on the flooring and the truck commenced to slide back. One of the men with plaintiff, who was walking up the incline behind the truck, put rocks under the back wheels in an attempt to hold it, but without avail. The truck slipped back, the earth gave way at the edge of the road, which was unprotected, save for some rotting stumps of what had been a railing, and the horses, truck and plaintiff fell to the canal bank, a distance of ten or eleven feet. The canal was in existence before the highway was projected across it.

A canal company is not bound by common law to erect or maintain a bridge over the canal where the highway is laid out over it after the canal's construction, and this is true as to the Morris canal. *Morris Canal and Banking Co. v. State,* 24 *N. J. L.* 62.

In answer to the third interrogatory propounded, the defendant asserted that the Morris canal was in existence before High avenue, on which the accident occurred; and in answer to the first interrogatory it was stated that the bridge was built between 1853 and 1856, and was rebuilt in 1871, but

whether originally constructed by the board of freeholders defendant was unable to say positively.

Defendant claims that no rule of English common law imposing upon counties the duty of erecting highway bridges ever obtained in this state, but that that duty was always the subject of statutory regulation with us, and that by colonial legislation the duty was laid upon certain persons, towns and townships. This is true, but the duty was, by statute, laid upon the counties of this state prior to the time when the bridge in question was constructed.

It is not necessary, for present purposes, to go back of the Revision of 1846 to find legislation requiring the boards of freeholders to build bridges. See *Rev.* 1846, *p.* 535, §§ 1, 2 and 3. It is true that by the Road act the building of bridges that can be built without the employment of craftsmen, is put upon the township. Annexed to the state of the case are photographs from which it is apparent that the bridge in question could not have been built by laborers, and, also, that the approaches up the acclivity, where the accident occurred, had been protected by guard rails which had decayed and partially fallen down. The photographs were in evidence.

It would seem that the bridge in question, built between 1853 and 1856, and repaired in 1871, was constructed by the county of Passaic; at least it was open to the jury to infer that it was. Assuming that the jury would have so found if permitted, the only remaining question is as to whether the freeholders were responsible for the construction and maintenance of the approaches to the bridge.

In *Freeholders of Sussex* v. *Strader,* 18 *N. J. L.* 108, it was held in the Supreme Court that the burden of repairing that part of the bridge called the abutments was unquestionably upon the board of freeholders and not upon the township; that the abutment is as much a part of the bridge as the piers and arches or the timbers. In that case the freeholders contended that that was not part of the bridge but a part of the road, and that it should have been repaired by the overseers of the highway. The court said that the term "bridge" conveyed the idea of a passageway by which

travelers are enabled to pass safely over streams and other obstructions; that the structure of stone and wood which spans the width of a stream, but is wholly inaccessible at either end, does not meet the idea of what is meant in law and common parlance by a bridge; that sound policy requires that the law be considered so as to compel those persons who erect the structure itself to make is accessible at its ends; that independent of all arguments drawn from public policy, such a construction as will compel those who make the bridge itself to fill it up at its ends so far as is necessary to make it a convenient and safe passageway for the public, will best conform to the course of legislation in this state as well as to ancient principles of the common law; that the legislation in this state affords many instances where companies and individuals are either bound or authorized to construct bridges, and in all such cases the word "bridge" is used as tantamount to a complete passageway; that it has never been doubted that when companies have been required to construct bridges over canals and railroads, that they were bound to fill up at the ends so as to make a complete and safe passageway for the public or the owners of adjoining lands; that where the legislature has authorized the construction of toll bridges and enacted penalties if the same be not kept in repair, the language used is merely "a good and complete bridge is to be erected;" and yet it can never be doubted that they were bound, not only to build and keep in repair the body of the bridge, but to fill up at the ends so as to make it an accessible and safe passageway. In all such cases where the word "bridge" has been used in our statutes, such has been its undoubted meaning. It is then shown by citations from English cases that this was the common law. To the same effect is *Freeholders* v. *Hough,* 55 *Id.* 628, 636, and *Woodbridge* v. *Raritan Traction Co.,* 64 *N. J. Eq.* 169.

Nor is there anything in *Ballantine* v. *Kearny Township,* 52 *N. J. L.* 338; *S. C. on appeal,* 54 *Id.* 194, which militates against this doctrine. In the Ballantine case, in the Supreme Court, it was held that the words "streets and roads" are not terms about the ordinary meaning of which any confusion can

arise, and that it was in this ordinary sense that the legislature had there employed them; that the words thus employed did not include the approaches to a bridge was the subject of direct adjudication by that court, citing Freeholders of Sussex *v.* Strader. And in the Court of Errors and Appeals it was held that although the term "bridge" *may* include the approaches, yet in the statute there under consideration it was not employed with so broad a meaning; that the statute required the counties to erect the bridge, and to bear the expense of constructing and maintaining it, while the expense of constructing and maintaining the approaches was imposed upon the town, township or municipality in which they lie and which are defined to be necessary to connect the bridge with the public roads or streets at either end, or to make such roads or streets conform to the grade of the bridge; that plainly, in that law, the bridge and the approaches are distinct things.

As those who are required to construct bridges are bound to fill up at the ends so as to make a complete and safe passageway for the public, it was for the jury to say whether the plaintiff's injury occurred within the distance back from the bridge abutments, for which the duty of filling up so as to make such complete and safe passageway rested on the defendant; and, if so, whether the condition of the passageway was such as to have caused the accident, and whether the defendant was responsible for that condition.

The legislature has recognized the liability of the freeholders in just such a case as this, for, by *Comp. Stat., p.* 4616, § 560, passed in 1892, it has provided that when any public road shall be unsafe to travelers by reason of unprotected embankments or unguarded bridge approaches, it shall be the duty of the township committee to notify the board of freeholders and it shall be the duty of that board to provide protection to travelers by erecting or repairing railings and guards along the embankments, bridge approaches, &c., at the expense of the county in the same manner that bridges are built and maintained by the board within the county.

Counsel for defendant-respondent says that this section was

doubtless enacted to meet a condition exactly like this one, but seeks to avoid its application in the case at bar by saying that the bridge in question was not one for which the freeholders, but the township, was responsible, and that in any event the freeholders would only be responsible after notice in writing from the township to the board. The record does not disclose any such notice.

Surely, the measure of the liability of the freeholders to a third party who was injured would not depend upon a proper performance of duty by the town authorities in notifying the freeholders. The latter's duty is unqualified. The provision is not that the freeholders shall repair provided only that they receive notice from the town, but the liability to repair is put upon them, and, in addition, the duty of notice is put upon the town or township authorities.

The situation in this respect is quite like that in *Edwards* v. *Freeholders of Sussex,* 76 *N. J. L.* 454, where the freeholders resisted the issuance of a *mandamus* to compel the repairing of a bridge upon the ground that no notice in writing under the hand of the overseer of the highway was given to the board of freeholders, as required by the Bridge act. But the Supreme Court held that it was not a condition precedent to the repairing of a public bridge by the freeholders that the overseer of the highways should give notice to the board under the act mentioned, as it was the duty of the board to take notice of such matters and act upon its own initiative.

In our opinion it was error to deny the right of the jury to pass upon the question whether the county built the bridge and the approaches and was responsible for their proper upkeep, and, therefore, the judgment of nonsuit should be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, JJ. 13.