Joseph COHEN, Margaret Cohen, Louis Cohen, Bella Cohen, Harry Sircus, Ann Sircus, Leo Pollock, Adele Pollock, E. R. Klein, Fay Klein, and Josephine M. Goldberg and Commerce Trust Company, co-Trustees of Charles E. Milens Trust, Appellants,

Hugh R. ENNIS, Thomas C. Bourke, David W. Childs, Clair H. Schroeder, and Luther Willis, members of and constituting the Board of Zoning Adjustment of Kansas City, Missouri, and Kansas City, Missouri, a municipal corporation, and Continental Baking Company, Inc., Respondents.

No. 22820.

Kansas City Court of Appeals.

Missouri.

June 2, 1958.

240

Philip L. Levi, Solbert M. Wasserstrom. Kansas City, for appellants.

Benj. M. Powers, Guy W. Rice. Fred Bellemere, Sr., Fred Bellemere, Jr., Kansas City, for respondents.

SPERRY, Commissioner.

This is an appeal by neighboring property owners from a judgment affirming a decision of the Board of Zoning Adjustment of Kansas City, whereby the Board granted the application of Continental Baking Company to use two vacant lots owned by it, for a truck turnaround and driveway into its bakery building.

This appeal was, originally, to the Supreme Court, on the theory that a constitutional question is involved. The Supreme Court considered the case and, in an opinion, held that under the record as presented, a constitutional question was not necessarily involved. Cohen v. Ennis, Mo., 308 S.W.2d 669. It transferred the case to us. The court indicated, however, that under certain conditions, a constitutional question might be involved.

Applicant owns a piece of real estate located at the northeast corner of the intersection of Troost and 30th Street, in Kansas City. This property extends northward along the east side of Troost, a distance of more than one-half block, and eastward one-half block along the north side of 30th Street. The entire property is occupied by a building in which applicant carries on its business of manufacturing bakery goods. Applicant also owns two vacant lots fronting on Forest Avenue, one block east of Troost. These lots are immediately in rear of the bakery building and abut thereon. The bakery property is in zone C3, but the two lots are zoned R4, for low residential apartment buildings, as is all of the real estate fronting on Forest, on both sides, between 29th and 30th Streets. Applicant sought to have the Board authorize it to use the vacant lots as a driveway into the bakery building, from Forest, and for maneuvering and turning its large over-the-road trucks so as to back them into its building.

The tract located at the northwest corner of the intersection of Forest and 30th Streets is occupied by Forest Manor Apartments, fronting on Forest for a distance of about 100 feet. The ground floor of the south side of this building, fronting on 30th Street, is occupied by some five store rooms in which various businesses are carried on. The remainder of the building is occupied by 76 residential apartments, 28 of which face the north, overlooking applicant's vacant lots which adjoin. They front on Forest for a distance of 99.16 feet. Immediately north and contiguous is the Thorndike Hall Apartments. North of it are two residences. That accounts for all of the real estate fronting eastward on Forest in that block. The entire east side of Forest, in that block, is occupied by residences and apartments.

Evidence was heard by the Board. The evidence was to the effect that applicant has carried on its business at its present location for many years; that, during the course of each 24 hour period, Mondays through Fridays, it is necessary for some sixteen 40 foot over-the-road trucks to enter its building to bring supplies and carry away products, and that 20 small trucks also enter and leave the building during the same period; that much of this truck activity occurs at night and during the early hours of the morning; that the large trucks can only enter by jackknifing and backing in from 30th Street; that it is unlawful and impractical to back into the building on the Troost side; that, for these large trucks to back into the building from 30th Street, it is necessary for the driver to come into the building and get two watchers to come out and guard against traffic accidents during the operation; that, during the operation, traffic on 30th Street is completely halted and the front wheels of the large trucks necessarily come onto the sidewalk on the south side of 30th Street when the trucks are jackknifed; that each operation consumes about 30 minutes of time. Applicant had filed its application to have its vacant lots rezoned, about a year previous to the filing of the instant application, but it was denied.

The application was under the provisions of Section 58-17 of the Zoning Ordinance of Kansas City, which is as follows:

"A driveway or walk to provide access to premises in Districts C-1 to C-4, inclusive, and M-1 to M-3, inclusive, shall not be permitted in a District R-1 to R-5, inclusive, except upon approval by the Board of Zoning Adjustment after a public hearing, when an undue hardship can be shown *and the driveway will not adversely affect the use of neighboring property.* (Italics supplied.) "Buildings or structures or uses which are necessary to the use permitted in one district shall not be permitted in a district of a higher classification."

The granting of the application was opposed at the hearing by Mr. Klein, an attorney and part owner of Forest Manor Apartments, who spoke for and represented

the owners of that and other property in the block between 29th and 30th, on Forest. A number of such other property owners were also present in person and gave evidence in opposition to the application. The evidence on behalf of protestants was to the effect that trucks being maneuvered, turned, and backed into applicant's building in and on the lots mentioned would necessarily result in causing loud and disturbing noises; that such noises and confusion would occur during the nighttime and in the early hours of the morning; that such noise would disturb the sleep and tranquility of residents of that area, particularly the tenants occupying the 28 apartments located on the north side of Forest Manor; that such disturbances did occur during a brief period when applicant used the lot for parking its small trucks; that during one week of such usage 17 tenants of Forest Manor gave notice of intention to vacate; that the noise also disturbed other residents of neighboring property; that the granting of the application and the use of the lots for the purposes mentioned would result in rendering the neighboring property less desirable, and in decreasing its value; that it would adversely affect the use and value of said property; that the use of the lots as proposed would also result in further congestion of traffic on Forest, a one way south street, already carrying heavy traffic; that it would materially decrease the parking space available to residents in that block, especially to the north of the driveway from the street, into the lots, because the large trucks would have to swing to the east in order to enter the driveway, and that decreasing the parking space on Forest and further congesting traffic would adversely affect the value and use of neighboring property. There was no testimony tending to contradict the above evidence, or tending to prove that neighboring property use and value would not be adversely affected by the granting of the permit.

The application was heard and evidence was taken on December 27, 1955. The mat-

ter was taken under advisement by the Board, at the conclusion of that hearing. On January 10, 1956, the Board rendered and filed its decision granting the application.

On March 21, 1956, protesting property owners, plaintiffs herein, filed their petition in circuit court seeking a judicial review of the decision of the Board. In their petition plaintiffs pleaded facts tending to show that their petition was timely filed under the provisions of Section 536.110, V.A.M.S. (The Administrative Procedure Act), although not filed within 30 days of rendition and filing of the Board's decision, because they were never notified of the decision reached and filed by the Board, as is provided by Section 536.090, V.A.M.S. Defendants, the Board and the applicant, filed their separate motions to dismiss the petition, in the assignment division of the circuit court, alleging as grounds therefor that the petition was not filed within 30 days after the filing of the Board's decision in its office, as is required by the provisions of Section 89.110, V.A.M.S. These motions were overruled by the assignment judge. No appeal was taken from that ruling, but defendants thereafter pleaded, in their separate answers, that plaintiffs' petition was filed out of time in violation of the provisions of Section 89.110, supra, and alleged that the action was barred by the statute of limitations. During the trial on the merits defendants renewed their motions to dismiss. The trial court failed to specifically rule the point but proceeded to hear the case on the merits, and affirmed the award and decision of the Board.

Plaintiffs were never notified of the decision reached and filed by the Board. They offered testimony tending to prove that they only learned of the Board's decision when they made inquiry of the Board after observing activities taking place on the lot which indicated that the application had been granted. This was more than 30 days after the decision had been filed.

Plaintiffs offered the testimony of Mr. Klein. He stated that, at the conclusion of

the hearing on December 27, he requested that he be notified of the final decision of the Board, and that Mr. Rice, assistant city counselor and attorney for the Board, stated that he would be so notified. Plaintiffs offered the testimony of three other witnesses in corroboration of Mr. Klein's testimony. However, Mr. Rice stated in evidence that he did not make such a statement, that he heard no such request or promise made, although he was present at the hearing and was in a position to hear everything that took place. He stated that he had played back a disk recording of the proceedings had at the hearing and that there was no record of such a request on the recording.

Miss Hough, who reported the proceedings, testified to the effect that her shorthand notes contained no reference to a conversation such as plaintiffs contend occurred. The transcript prepared by her and filed in the case makes no reference to such a conversation. Miss Hough certified that it was a true and complete record of the proceedings and she stated on the stand that she did so certify. She also stated that a disk recorder was in operation throughout the hearing, that she had checked that record, and that she heard no reference to any such conversation in such recording, but that she heard the next case called on the recording.

■ Plaintiffs contend that the court's action in proceeding to hear and adjudge the cause on its merits, had the effect of overruling defendants' motions to dismiss. There is merit in that contention.

However, if Section 89.110 of our statutes controls this action, as defendants contend, the failure of the Board to notify plaintiffs of its action, even though its attorney may have said that they would be notified, is not material.

That section provides in part as follows:

"89.110. Board of adjustment—decisions subject to review—procedure.

"Any person or persons jointly or severally aggrieved by any decision of the board of adjustment, or any officer, department, board or bureau of the municipality, may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. *Such petition shall be presented to the court within thirty days after the filing of the decision in the office* of the board. * * *" (Emphasis supplied.)

■ The legislature provided therein, in detail, the procedure to be followed by *all* parties, including the court and the Board, in an action brought thereunder. Nowhere does there appear any provision to the effect that any person or party participating in a hearing before the Board shall be notified of the final decision reached or filed by the Board. It is true that the city ordinance (Sec. 58-27) does make provision for notifying the applicant; but it contains no such requirement relative to others. What may have been said by the Board's counsel, if it was said, concerning notice to persons other than applicant cannot have the effect of modifying the statute or the ordinance, and cannot place on the Board an obligation not placed on it by law, for it is bound only by the law as declared by the law making authority.

The provisions of Chapter 89, V.A.M.S., are applicable to all municipalities in the state that are located in counties having a population of 10,000 or more. Section 89.010, V.A.M.S. It is, therefore, applicable to Kansas City.

Plaintiffs contend that this action is governed by the provisions of Chapter 536, V.A.M.S. Section 536.090 provides that every decision in a contested case (before the administrative agency) shall be in writing and immediately upon deciding such a cause the agency shall give written

notice of its decision to each party or his attorney of record. Section 536.100 provides that any person who has been aggrieved by a final decision in such a case shall be entitled to judicial review thereof "as provided in section 536.100 to 536.140, unless *some other provision for judicial review is provided by statute.*" (Emphasis supplied.) Section 536.110 provides for judicial review by the filing of a petition therefor "within thirty days after the mailing or delivery of the notice of the agency's final decision."

 It would seeem to be clear that Chapter 536, supra, does not govern the proceeding which is before us. By specific language it is made definite that it has no application in a case where there is some other statutory provision for judicial review. Chapter 536 was designed to implement the constitutional provisions relating to judicial review of adminstrative agency actions; but its judicial review provisions do not apply to those agencies which have their own review procedure. University of Kansas City Law Review, Vol. 19, pages 286, 287.

In the instant case the Board made no finding to the effect that the use of applicant's lots, as authorized by its decision, would not adversely affect the value and use of plaintiffs' property, although it was required to do so by ordinance. The Board could not have made such a finding, under the evidence, because all of the testimony was to the effect that plaintiffs' property would be depreciated in value and would be less desirable for the purposes to which it is dedicated, if applicant is permitted to use the lots in the manner authorized by the Board's decision.

As we indicated earlier, at the circuit court stage appellants contended they were entitled to be heard by the circuit court on their attempted appeal on the merits for the reason that the statute requiring them to appeal within 30 days of the filing of the Board's decision was invalid and unconstitutional. They say directly that Section

89.110 is in conflict with the provisions of Article 5, Section 22, of the 1945 constitution, V.A.M.S. While the circuit court did not specifically pass on this contention, it did permit the appeal and did review the matter on the merits. Thus appellants were given the review on the appeal that they contended for, and therefore there was no live constitutional question as the case then stood. Appellants appealed to the Supreme Court from the adverse decision of the circuit court on the merits, and it was at this point that the Supreme Court transferred this case to us on the ground that the case might be decided absent the reaching and deciding of any constitutional question.

If upon our review of the record we had concluded that the circuit court's affirmance on the merits of the order of the Board was proper, no live constitutional question would ever be presented. Appellants would have received the review on the merits of the case on appeal for which they contended without any necessity of constitutional considerations on this appeal.

██ However, upon our review of the record and of the action of the circuit court and the Board, we have found that there was no competent and substantial evidence in the record to support the Board's order and the circuit court's affirmance of that order. Ordinarily, this would mean that we must reverse and remand the case. Such action by us would have the direct effect of taking away from respondents their victory obtained before the Board, which victory they say is final because of appellants' failure to appeal therefrom within 30 days as required by Statutory Section 89.110. This brings us face to face with appellants' contention that Statutory Section 89.110 is unconstitutional. Thus, our review of the record has now necessarily brought us to a live constitutional question; namely, is Statutory Section 89.110 unconstitutional as applicants contend?

We lack authority to decide constitutional questions, and must transfer this cause to

the Supreme Court which has exclusive appellate jurisdiction in such instances.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The cause is transferred to the Supreme Court.

All concur.