**STATE ex rel. STATE HIGHWAY COMMISSION of Missouri, Appellant,**

v.

**Duane C. WIGGINS et al., Respondents.**

No. 54383.

Supreme Court of Missouri,
En Banc.

June 8, 1970.

Robert L. Hyder, Chief Counsel, Jefferson City, Terry C. Allen, Asst. Counsel, Sikeston, for appellant.

Joe Welborn, Briney, Welborn & Spain, Bloomfield, for respondents.

STOCKARD, Commissioner.

Appellant State Highway Commission seeks an injunction against respondents Duane C. and Gonnie Wiggins from operating what is alleged to be an unlawful junk yard.

Appellant alleged that respondents operate a junk yard within 1,000 feet of the nearest edge of the right-of-way of Missouri State Highway 25; that the junk yard was not lawfully in existence on August 4, 1966, in that it was "within 200 feet of the right-of-way of a state road" and was not screened; that the junk yard is not licensed to operate; and that after having given no-

tice to "correct the violation of law within 60 days" respondents have failed to do so.

Respondents alleged that they operated "an automobile business" which had been in operation many years prior to August 4, 1966, and that on that date and at no time thereafter were any junked automobiles or parts maintained within 200 feet of State Highway 25. Respondents also alleged that Senate Bill 9, Laws of Missouri 1965, page 905 (now §§ 226.650–226.720, V.A.M.S., and hereafter referred to by section numbers) is unconstitutional for several reasons, at least one of which was not ruled on in Deimeke v. State Highway Commission, Mo., 444 S.W.2d 480.

At the conclusion of all the evidence the trial court found "the issues against [appellant] and in favor" of respondents, and it decreed that the "petition for injunction be denied and dismissed."

We are first confronted with the issue of whether appellate jurisdiction is in this court. If so, it is solely because the case is one "involving the construction of the Constitution * * * of this state." Art. V, § 3, Constitution of Mo., V.A.M.S.

■ A constitutional issue may be presented by a defendant in the trial court, and in the event of a ruling thereon adverse to the appellant, the issue may, if preserved for appellate review establish exclusive appellate jurisdiction in this court. For example, see Ivey v. Ayers, Mo., 301 S.W.2d 790. Appellant contends jurisdiction in this case is in this court because by finding "the issues" in favor of respondents, the trial court sustained respondents' contention that §§ 226.650–226.720 are unconstitutional. Respondents filed no motion for new trial because they won in the trial court, but in the event the factual issues are decided against them on this appeal they have attempted to keep the constitutional issues alive by briefing them.

■ As a general rule, in the absence of evidence to the contrary, a general judgment for one party involves a finding in

that party's favor on all issues properly before the court. 49 C.J.S. Judgments § 441. The issue of the constitutionality of §§ 226.-650–226.720 was before the circuit court, and we necessarily conclude that the trial court held adversely to appellant on that issue. It may be that this appeal can be decided without reaching the constitutional issue, but jurisdiction once acquired is not lost because the appeal may be disposed of on other grounds. City of St. Louis v. Flynn, Mo., 386 S.W.2d 44; Haley v. Horjul, Inc., Mo., 281 S.W.2d 832. We mention one further matter to demonstrate the soundness of the above result. If this case should be transferred to the court of appeals, and if that court agreed with respondents' contentions on the issues not involving the constitutionality of the statutes, then the case could be disposed of by that court. But if the court of appeals found those issues in accord with the contentions of appellant, then the challenge to the constitutionality of the statute must be ruled, an issue outside the jurisdiction of the court of appeals. The case would then have to be transferred to this court. However, this court has *exclusive* appellate jurisdiction of the case or no jurisdiction at all; not exclusive jurisdiction of certain issues of a case. Exclusive appellate jurisdiction of a case cannot depend upon how certain issues of that case are decided, with appellate jurisdiction in this court if decided one way but jurisdiction in the court of appeals if decided the other way. We conclude that appellate jurisdiction of this case is in this court.

It is provided in § 226.670, that no person shall establish or operate a junk yard, any portion of which is within 1,000 feet of the "nearest edge of the right-of-way of any interstate or primary highway" without first obtaining a license from the State Highway Commission. § 226.680 limits the granting of licenses to four specified categories, and § 226.690 provides that junk yards "lawfully in existence on August 4, 1966," but which are within 1,000 feet of and are visible from the highway are to be screened, if feasible, by the State Highway Commission at its expense, and the Commission is empowered to acquire such lands or interest in lands as necessary for such screening.

Prior to the enactment of §§ 226.650–226.720, the statutory provision regulating junk yards was § 229.180, now repealed, which provided that "No auto wrecking yard or junk yard shall be established, maintained or operated within two hundred feet of any state or county road in this state, unless such auto wrecking yard or junk yard is screened * * *." Violation of this statute was made a misdemeanor. § 229.190.

Appellant called as a witness Duane C. Wiggins who admitted that he operated a junk yard. However, he further testified that prior to August 4, 1966, he measured a line parallel to the highway and 200 feet "from the edge of the pavement," and that from then on he placed and kept all of his "salvagable vehicles" back of that line. However, his testimony indicates that on August 4, 1966, he was operating a junk yard, a portion of which was within 200 feet of the "nearest edge of the right-of-way" for State Highway 25. There was an attempt on the part of the appellant to show that after August 4, 1966 respondents had kept or maintained junk within 200 feet of the edge of the pavement, but that evidence was not persuasive. It certainly did not compel such a conclusion, and the trial court did not so find. There is no compelling reason why this court should not defer to the findings of the trial court in this respect. The essential question is one of law, and that is whether the 200 feet referred to in § 229.180 is to be measured from the "nearest edge of the right-of-way" or from the pavement, or from some other part of the road.

■ The basic rule of construction of a statute is to seek the intention of the Legislature, Julian v. Mayor, Councilmen and Citizens of City of Liberty, Mo., 391 S.W.2d 864, which should be ascertained

from the words used, if that is possible, Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122, and in doing so the words should be given their plain and ordinary meaning so as to promote the object and manifest purpose of the statute. City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4. The word "road" is a generic term, Inhabitants of Windham v. Cumberland County Commissioners, 26 Me. 406, and has no fixed legal meaning. Southern Ry. Co. v. Combs, 124 Ga. 1004, 53 S.E. 508. Depending upon the purpose of the statute in which the word is used it has been held to include ferries and bridges, Almond v. Gilmer, 188 Va. 822, 51 S.E.2d 272; the improved portion of a highway, Elms v. Flick, 100 Ohio St. 186, 126 N.E. 66; Armour & Co. v. Yoter, 40 Ohio App. 225, 178 N.E. 596; but not bridges over large streams, Hedrick v. Summers County Court, 71 W.Va. 732, 77 S.E. 359; nor approaches to bridges, Robinson v. Board of Chosen Freeholders of Passaic County, 91 N.J.L. 154, 102 A. 359; nor ditches, slopes or shoulders, Norfolk & W. Ry. Co. v. Faris, 156 Va. 205, 157 S.E. 819. The term "to the road" in a deed describing a line as extending to the road was held to mean the center of the road in Goodeno v. Hutchinson, 54 N.H. 159.

The Legislature of this State has used the term "road" with different meanings. In § 229.010 it is provided that all "public roads" shall not be less than 30 feet in width. This necessarily refers to the width of the public right-of-way. However, in § 229.030 it is provided that "public roads" shall be cleared of all obstructions therein "that hinder or interfere with travel or traffic thereon, and shall be made firm, and the surface thereof shall be kept in a reasonably smooth and level condition." Here the term obviously refers to the traveled portion of the highway. It is also clear that the Legislature has recognized that the terms "right-of-way" and "road" are not necessarily the same. § 229.110 requires the trimming of a hedge fence "situated along or near the right of way of any public road," and in § 229.150 it is made a crime to willfully obstruct or damage a "public road" "by turning water upon such road or right of way, or by throwing or depositing brush, trees, stumps, logs, or any refuse or debris whatsoever, in said road, or on the sides or in the ditches thereof, or by fencing across or upon the right of way of the same."

Recognizing that the Legislature has used the term "road" with different meanings, we must attempt, by examining the total circumstances and the purpose or object of the legislation, to determine the intent of the Legislature when it used the term in § 229.180.

 The obvious purpose of § 229.180 was to require that junk yards be screened from the view of the persons using the road, or that the portion of a junk yard nearest to a road be located not less than 200 feet from persons normally using the road. This is evident from the provision in the statute that when a junk yard was required to be screened, the screen should be "of sufficient height to screen the wrecked or disabled automobiles or junk kept therein from the view of persons using such road on foot or in vehicles in the ordinary manner." A use of a road "in the ordinary manner" obviously refers to a use of that portion which has been prepared and adapted to travel; it would not refer to a use of the ditches, slopes, or grass-covered areas extending to what is referred to as the right-of-way line. This construction of § 229.180 is supported by the language subsequently used by the Legislature when it enacted §§ 226.650–226.720. Apparently the Legislature recognized that the language of § 229.180 did not express an intent to measure the 200 feet from the right-of-way line of a road, because § 226.670 provides that "No person shall operate, establish, or maintain a junkyard, any portion of which is within one thousand feet of the nearest edge of the right-of-way of any interstate or primary highway, * * *." If the language of § 229.180 expressed an intent that the 200 feet therein provided for should be

measured from "the nearest right-of-way line," as contended by appellant, the Legislature would not have deemed it necessary to change the language and specifically provide that the one thousand feet should be measured from the "nearest edge of the right-of-way." In addition, in the same legislative act in which § 226.670 was enacted using the reference to the "nearest edge of the right-of-way," the Legislature included what is now § 226.720, pertaining to junk yards near "state and county roads" other than those referred to in § 226.670, and it there provided that "No junkyard shall be established, maintained or operated within two hundred feet of any other state or county road in this state unless such junkyard is screened * * *." It thus appears that in the same legislative act it is provided that the 1,000-foot limit should be measured from the "nearest edge of the right-of-way" and that the 200-foot limit should be measured from the "state or county road." Some meaning must be attributed to the difference in the language, and the courts must give some effect to the change in language used by the Legislature when it enacted § 226.670. 82 C.J.S. Statutes § 384, p. 905. It is perfectly clear what was meant by the provision that the 1,000 feet should be measured from the "nearest edge of the right-of-way," and it is equally clear that the Legislature did not use that term and the provision for measuring the 200 feet from "any state or county road" with the intent that they have the same meaning. When we consider the obvious purpose of § 229.180, and the subsequent recognition by the Legislature that § 229.-180 did not call for the measurement of the 200 feet to be from the "nearest edge of the right-of-way," we conclude that the Legislature intended that the 200 feet provided for in § 229.180 should be measured from that portion of the highway which would be used by persons "using such road on foot or in vehicles in the ordinary manner," and not from the "nearest edge of the right-of-way." When so construed, and applied to the facts of this case, and when we give deference to the evaluation of the evidence by the trial court, appellant did not sustain its burden of establishing its right to the injunction requested.

■ One further matter merits a brief comment. § 226.700 authorizes appellant "to promulgate reasonable rules and regulations to implement" §§ 226.650–226.720, and appellant offered in evidence its "Rules For Licensing Junkyards." Section 7 thereof provides that "Any junkyard which, on August 4, 1966, is located within 200 feet of the nearest right of way line of any interstate or primary highway and which is visible from said highway and is not screened * * * shall not be considered to be a junkyard lawfully in existence on August 4, 1966, * * *." The statutory authority to promulgate reasonable rules and regulations does not include the authority to declare that the 200 feet provided for in § 229.180 must be measured from the nearest edge of the right-of-way when the construction by the courts of that statute is otherwise.

All the constitutional issues raised by respondent, and apparently ruled adversely to appellant by the trial court, were ruled adversely to respondent in Deimeke v. State Highway Commission, Mo., 444 S.W.2d 480, except the contention pertaining to the denial of equal protection of the laws. In view of our conclusion on the other issues we need not rule this remaining constitutional issue. However, as previously noted, this result does not deprive this court of appellate jurisdiction of the case.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion written in Division Two by STOCKARD, C., is adopted as the opinion of the Court en Banc. The judgment is affirmed.

FINCH, J., concurs in separate concurring opinion filed.

SEILER, MORGAN, HOLMAN and BARDGETT, JJ., concur and concur in separate concurring opinion of FINCH, J.

DONNELLY, J., dissents in separate dissenting opinion filed.

HENLEY, C. J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

FINCH, Judge (concurring).

I concur in the principal opinion. I file this concurring opinion because I have concluded that there should be some discussion of cases which Commissioners Barrett and Pritchard in their dissenting opinions say dictate a transfer of this case to the Springfield Court of Appeals.

To again summarize the situation, the Highway Commission sought to enjoin the operation of defendants' junkyard under the provisions of Senate Bill 9, Laws of Mo., 1965, p. 905. Defendants' answer pleaded that they had grandfather rights because on August 4, 1966, the determinative date, their junkyard was not within 200 feet of any state or county road, and, secondly, that the provisions of Senate Bill 9 were unconstitutional in that they violated several specifically enumerated provisions of the Constitution of Missouri. The trial court, after a hearing, found generally for defendants and denied an injunction. No findings of fact or conclusions of law were filed. The Commission then filed a motion for new trial, which made no reference to the constitutional issue. Defendants, at that point, did nothing further because the trial court had decided the case in their favor and had denied the injunction. The trial court overruled the Commission's motion for a new trial and it appealed to this court.

The brief filed here by the Commission stated that a constitutional issue was involved on the theory the trial court, in deciding all issues for defendants, necessarily held that the Act was unconstitutional. In its points relied on and argument the Commission's brief in this court presents the issue of whether the statute relied on is constitutional. The brief of defendants likewise fully briefed and argued the constitutional questions.

The first defense raised by the defendants in the court below and in this court is that they had grandfather rights to operate their junkyard. This issue does not involve constitutional questions. Clearly, it is possible to decide the case without reaching or considering the constitutional issue. The principal opinion does just that by holding that defendants have grandfather rights under the prior Act. However, if, on this appeal, that issue were decided in favor of the Commission and adversely to the defendants, then defendants would be entitled to assert that the judgment in their favor nevertheless should be affirmed for the reason, as pleaded in their second defense, that the Act relied upon by the Commission is unconstitutional. That issue was timely and sufficiently raised by the defendants in the trial court and has been properly preserved and briefed by them in this court. They are entitled, if necessary to sustain their judgment, to a determination of that issue. Turner v. Anderson, 236 Mo. 523, 139 S.W. 180; Kennedy v. Dixon, Mo., 439 S.W.2d 173; St. Charles Savings Bank v. Denker, 275 Mo. 607, 205 S.W. 208; Crabtree v. Bankers Life Ins. Co., 233 Mo.App. 1067, 128 S.W.2d 1089.

The jurisdictional question presented is whether, in such circumstances, this case involves construction of a provision of the Missouri Constitution so as to give this court jurisdiction under Art. V, § 3, Constitution of Mo., 1945. The dissenting opinions express the view that it does not. One of the cases cited in support of this view is Cohen v. Ennis, Mo., 308 S.W.2d 669. In that case this court ordered a transfer to the Kansas City Court of Appeals, holding that the issue presented was whether a decision of the Board of Zoning Adjustment in Kansas City was supported by competent and substantial evidence and by necessary findings of fact. The opinion also stated that no constitutional question was raised even though the contention was made that the Board's order was made without

due process of law in violation of specified provisions of the Missouri and Federal Constitutions.

This question of when there is Supreme Court jurisdiction on the basis that a construction of the Constitution is involved has been an extremely troublesome one for the courts. See "The Allocation of Original Appellate Jurisdiction in Missouri," Washington University Law Quarterly, December 1964, p. 424, and particularly Chapter 1 thereof, beginning at page 442. An example is a series of three cases in which this court first transferred an appeal to the Court of Appeals, it then wrote an opinion transferring the case back, and the Supreme Court finally wrote an opinion deciding the appeal. These cases illustrate the sad story of what can happen in this area.

Following the Cohen v. Ennis case in 308 S.W.2d 669, the Kansas City Court of Appeals in Cohen v. Ennis, Mo.App., 314 S.W. 2d 239, decided that there was no competent and substantial evidence in the record to support the Board's order or the affirmance thereof by the Circuit Court. However, the Court of Appeals decided that it could not simply reverse and remand the case. In stating the court's dilemma, it said, l. c. 244:

"However, upon our review of the record and of the action of the circuit court and the Board, we have found that there was no competent and substantial evidence in the record to support the Board's order and the circuit court's affirmance of that order. Ordinarily, this would mean that we must reverse and remand the case. Such action by us would have the direct effect of taking away from respondents their victory obtained before the Board, which victory they say is final because of appellants' failure to appeal therefrom within 30 days as required by Statutory Section 89.110. This brings us face to face with appellants' contention that Statutory Section 89.110 is unconstitutional. Thus, our review of the record has now necessarily brought us to a live constitutional question; namely, is Statutory Section 89.-110 unconstitutional as applicants ·contend?

"We lack authority to . decide constitutional questions, and must transfer this cause to the Supreme Court which has exclusive appellate jurisdiction in such instances."

The case then was retransferred to the Supreme Court which in Cohen v. Ennis, Mo., 318 S.W.2d 310, finally decided the case.

If, as suggested in the dissenting opinions, we should transfer this case to the Springfield Court of Appeals on the basis that a decision of the case does not necessarily involve a construction of the Constitution of Missouri or that no constitutional issue was preserved by appellant, then we might well end up with a situation similar to that which occurred in the Cohen v. Ennis cases. If the Springfield Court of Appeals should reach the same conclusion as that set out in the principal opinion, namely, that the defendants had grandfather rights, no problem would arise because that would dispose of the case. However, if the Court of Appeals should conclude that the defendants do not have grandfather rights under the prior statute, then the problem would arise as to what disposition of the case should be made. Presumably, it would do as the Kansas City Court of Appeals did in Cohen v. Ennis and say that it is necessary to reach and decide the constitutional issue, necessitating retransfer of the case to the Supreme Court for decision. Perhaps a second possibility would be for that court to say that since the Supreme Court has said no constitutional issue is involved, when the case is decided on the basis that there are no grandfather rights under the prior statute, that ends the litigation. Such a conclusion would produce the unthinkable result that the defendants never would get an appellate review of the constitutional issues that they raised promptly and have preserved at every level in every way available to them. See Turner v. Ander-

son, supra, 139 S.W. l. c. 185 [5]. Possibly a third alternative would be to reverse and remand the case to the trial court for a new trial on the constitutional issue, resulting presumably in a new appeal from that decision of the constitutional issue. All three of the possibilities illustrate the undesirable situation which results from a transfer of a case to a Court of Appeals when in fact a constitutional issue is involved and may have to be decided. This necessarily is true because we are sending them a case which they can decide one way but may not decide the other way since they have no jurisdiction to decide the constitutional issue then presented. See Cohen v. Ennis, Mo.App. 314 S.W.2d 239.

Another case cited in the dissenting opinions is Killian v. Brith Sholom Congregation, Mo.App., 154 S.W.2d 387. The Court of Appeals in that case concluded that it had jurisdiction of the appeal. In so deciding, the court said, l. c. 393:

"However, before this court can be deprived of jurisdiction upon the ground that a constitutional question is involved, the party who asserts such question must be able to show that he claimed, in the trial court, some constitutional right which was denied him, or that a constitutional question was ruled to his own disadvantage in his adversary's favor. Hanlon v. Pulitzer Publishing Co., 167 Mo. 121, 66 S.W. 940; Lux v. Milwaukee Mechanics' Insurance Co., Mo.Sup., 285 S.W. 424. In short, the constitutional question must have been ruled in the trial court against the party appealing; and absent an adverse ruling denying some constitutional right to the losing party in the trial court, there is no such question left in the case for the purpose of affecting the course of jurisdiction over the appeal."

If the above test is applied here, this court may not have jurisdiction of this appeal. We cannot say with certainty that the trial court decided the constitutional issue adverse to the Highway Commission, the appealing party. The judgment does not say whether or not the trial court reached a conclusion as to the constitutionality of the statute, and if so, the conclusion it reached. It could have entered the judgment it did purely on the basis of the existence of grandfather rights without ever reaching the question of the constitutionality of the 1965 Act under which the Commission sought its injunction. However, the test set out above in the Killian case overlooks completely the possibility that occurred in the Cohen v. Ennis cases and which would occur here if this case is transferred to the Court of Appeals and it decides that defendants did not have grandfather rights under the old Act. Necessarily, when and if that conclusion is reached, these defendants are entitled to a determination as to the validity of their second defense, namely, that the 1965 Act on which the Commission relies is unconstitutional. Turner v. Anderson, supra; Kennedy v. Dixon, supra; St. Charles Savings Bank v. Denker, supra; Crabtree v. Bankers Life Ins. Co., supra.

In my view, the Supreme Court did not first acquire jurisdiction in Cohen v. Ennis when and because the Kansas City Court of Appeals decided that it could not dispose of the case on the nonconstitutional issue presented and that a decision on the constitutional construction question was necessary. If the constitutional issue was present in the case, as it was, it was there when the appeal was taken from the Circuit Court. I am of the opinion that the Supreme Court had jurisdiction of the appeal from the outset and that the case should have been written and decided here and never sent to the Kansas City Court of Appeals. I would so hold, and would state that any prior decisions inconsistent with such a conclusion no longer should be followed. Necessarily, such ruling would result in retention of this case on the basis that we have jurisdiction thereof.

One of the dissenting opinions also cites City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372. The majority opinion in that case seems to decide first that

a constitutional issue was not properly preserved for review. It has not been possible to verify this by checking the transcript and briefs in that case because all of these were transmitted to the St. Louis Court of Appeals when the case was transferred as a result of the above cited decision. After deciding that a constitutional issue was not preserved, the principal opinion then went on to a discussion of what is described as the inherency doctrine, referred to in many earlier cases. The majority opinion concludes that the inherency doctrine itself was unconstitutional and that it no longer should be followed.

It may be that in some respects the City of St. Louis v. Butler Company case is distinguishable from this case. I do not consider that the presence of a constitutional issue in this case is based on a theory of inherency. Instead, it is due to the fact that defendants pleaded the issue and have preserved it at every opportunity. However, it must be acknowledged that some of the language in the Butler Company case would indicate that this appeal should be transferred to the Springfield Court of Appeals. For example, it mentions that the appellant in that case had not negatively raised the constitutional issue in its motion for new trial, and hence the issue was not preserved and the Supreme Court had no jurisdiction. Likewise, in this case the Commission's motion for new trial did not mention the constitutional issue. I see no useful purpose in this opinion in analyzing the Butler Company case in greater detail. Suffice it to say that if by what is said in the Butler Company case, the court is saying that the Supreme Court would have no jurisdiction in this case, I think it is wrong. I would hold that to the extent it is inconsistent with a decision retaining jurisdiction in this case, it should no longer be followed.

DONNELLY, Judge (dissenting).

There is nothing in the record to affirmatively indicate that the trial court ruled the constitutional question raised in respondents' answer. Therefore, I respectfully dissent because I do not believe this Court has jurisdiction of this appeal. Kersting v. City of Ferguson, Mo.Sup., 388 S.W.2d 794; City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372, 378.

HENLEY, C. J., concurs.